[L. A. No. 1508. In Bank.—June 24, 1905.]

In the Matter of the Estate of C. W. THOMAS, Deceased. ELIZABETH THOMAS, Appellant, v. MRS. CHARLES BRYANT et al., Respondents.

ESTATES OF DECEASED PERSONS—DISTRIBUTION—STOCK IN WATER COMPANY—APPURTENANCE TO LAND.—In distributing the estate of a deceased person, the court may properly distribute to the devisees of lands shares of stock in a water company representing waterrights used upon the land devised, and which are appurtenant thereto, and which were merely conveyed to such company for convenience in the management and distribution thereof, and the stockholders in which were entitled to receive their proportionate share of all the water distributed thereby.

ID.—AMENDMENT TO CIVIL CODE INAPPLICABLE.—The amendment of 1895 to section 324 of the Civil Code subsequent to the organization of such water company is inapplicable thereto, and non-compliance therewith cannot invalidate the terms of its organization.

ID.—SHARES PERSONALTY FOR TRANSFER—POWER TO SEVER WATER-RIGHT —APPURTENANCE UNTRANSFERRED — TITLE BY DEVISE. — Notwithstanding, under the terms of section 324 of the Civil Code, as it originally stood, the shares of stock in such water company were personalty, as respects the mode of transfer, and there was power in a stockholder to sever the water-right by indorsement of the

certificate of stock, such mere power cannot destroy the water-right as an appurtenance to the land while the stock remains un-indorsed and untransferred; and where the decedent had not alienated his stock in his lifetime, it passed to his devisees as an appurtenance to the land, and not to his residuary legatee.

ID.—WATER COMPANY NOT NECESSARY PARTY.—The water company was not a necessary party to a controversy between devisees and a residuary legatee as to the distribution of shares of its stock, though if it has adverse rights, it is not bound by the decree, and may assert them whenever drawn in question.

APPEAL from a decree of the Superior Court of Orange County distributing the estate of a deceased person. Z. B. West, Judge.

The facts are stated in the opinion of the court.

Scarborough & Forgy, for Appellant.

The shares of stock were not appurtenances to the land, and were personal property, which passed under the residuary clause in the will. (Civ. Code, secs. 324, 1332, 1333; *Tregear* v. *Etiwanda Water Co.,* 76 Cal. 537,[1] 18 Pac. 658; *Kohl* v. *Lilienthal,* 81 Cal. 378, 20 Pac. 401, 22 Pac. 689; *Gould* v. *Stafford,* 91 Cal. 146, 27 Pac. 543; *Spurgeon* v. *Santa Ana Valley Irrigation Co.,* 120 Cal. 71, 52 Pac. 140.

F. O. Daniel, and R. Y. Williams, for Respondents.

The water company was a mere agency of the stockholders for distribution of the water according to their respective rights, and left their water-rights unaffected as appurtenant to their lands. (*Hunt* v. *Davis,* 135 Cal. 31, 66 Pac. 957; *Shorb* v. *Beaudry,* 56 Cal. 446; *Chater* v. *San Francisco etc. Co.,* 19 Cal. 247; *Cornell* v. *Corbin,* 64 Cal. 200, 30 Pac. 629; *Hildreth* v. *Montecito Water Co.* (Cal.), 70 Pac. 673; *Kennedy* v. *California Savings Bank,* 97 Cal. 93,[2] 31 Pac. 846; *Arroyo Ditch Co.* v. *Dorman,* 137 Cal. 613, 70 Pac. 737; *Hildreth* v. *Montecito Water Co.,* 139 Cal. 22, 72 Pac. 395; *McFadden* v. *Los Angeles County,* 74 Cal. 571, 16 Pac. 397; *McDermott* v. *Anaheim Union Water Co.,* 124 Cal. 114, 56 Pac. 779; *Wyatt* v. *Larimer & Weld Irrigation Co.,* 18 Colo. 298,[3] 33 Pac. 144; *Wheeler* v. *Northern Colorado Irrigation Co.,* 10 Colo. 582,[4]

---

[1] 9 Am. St. Rep. 245.          [3] 36 Am. St. Rep. 280.
[2] 33 Am. St. Rep. 163.          [4] 3 Am. St. Rep. 603.

17 Pac. 487; *Combs* v. *Agricultural Ditch Co.*, 17 Colo. 146,[1] 28 Pac. 966.)

BEATTY, C. J.—This is an appeal by Elizabeth Thomas, widow of the deceased and residuary legatee under his will, from that part of the decree of distribution of his estate which gives to Mrs. Charles Bryant and her children eight shares of the capital stock of the Trabuca Water Company, and directs the executors to transfer the same to them.

The will contains the following clause: "I hereby give and devise to my beloved sister, Mrs. Charles Bryant, of the state of Iowa, and her children, share and share alike, those certain six acres of land situate in Orange County, state of California, purchased by me from Albert Fuller in the year A. D. 1897 or 1898." After other special devises, all the residue of the property, both real and personal, was left to the appellant, the surviving wife. The decree distributed to the respondents the six acres of land mentioned in the above clause of the will, describing it particularly, and adding thereto the following: "Together with the water-rights incident and appurtenant thereto or thereto belonging or appertaining, including eight shares of the capital stock of the Trabuca Water Company which were used upon the said land and which are found herein to be incident and appurtenant to and belonging to it." And it further directs the executors to indorse and transfer the certificate for said stock so that the same could be transferred upon the books of the company to respondent. The question is whether the eight shares of stock were appurtenant, as a right to so much water, to the six acres of land left to the sister and her children, and consequently were real property, or whether they were personal property in the same sense as other corporation stock. If they were appurtenant to the land, the decree was correct, otherwise not.

The facts relied upon in support of the claim that the capital stock in question is appurtenant to the six acres of land are as follows: In January, 1892, the six acres belonged to one J. P. Fuller, who, with some fifteen other landowners in the vicinity, owned as appurtenant to their several tracts of land the right to the use of the waters of Trabuca Creek for the purposes of irrigation. By agreement or acquiescence of all

---

[1] 31 Am. St. Rep. 275.

the owners, each was entitled to receive in his regular turn all
the water of the creek for a "run" of a certain number of
hours, according to the area of the land irrigated by him,
until all the owners had had one turn, when the course of
delivery was repeated in the same order. The several parties
so owning said water as appurtenant to the respective tracts
of land, for the purpose of greater economy and convenience
in the systematic management of the ditch and the payment
of the expenses incident thereto, and for the just distribution
of the waters of said creek according to the recognized rights
of the several owners, incorporated the Trabuca Water Com-
pany. For convenience the stock of the corporation was di-
vided into a number of shares equal to the aggregate number
of hours' use of the water necessary to give one turn to each
of the owners. Thereupon, in March, 1892, all the owners
conveyed to the corporation, by deed of grant, the ditches then
in use for the conveyance of the water, and all their water-
rights in the waters of Trabuca Creek. This deed contains the
clause: "Also the right to use the waters of Trabuca Creek
for supplying said ditch. And any rights which may have
accrued to said parties by their use of the waters of said
creek for irrigation." In payment for this conveyance the
corporation issued to each landowner a certificate of stock for
a number of shares equal to the number of hours to which
he had been entitled to use the water on his land in a single
"turn." Each share of stock was understood by the incor-
porators to represent one hour's run of water. It was under-
stood by the incorporators at the time, and the custom of the
corporation ever since seems to have been in accordance with
such understanding, that no dividends were to be paid upon
the stock, but that each owner of stock was entitled to all the
water in his turn for a number of hours equal to the number of
shares of stock held by him.

This understanding and practice were within, and entirely
consistent with, the purposes for which the corporation was
formed, which were, as stated in its articles of incorporation,
"to locate, develop, buy, sell and distribute, water for irri-
gating, manufacturing and domestic purposes, upon the lands
described as follows: . . . Also, to acquire such real estate
as may be necessary for reservoirs, pumping works, rights of
way, water ditches, and for piping and furnishing water to

the town of San Juan Capistrano." The corporation has never undertaken to do all the things that it might lawfully have done without transgressing the terms of its charter, but on the other hand it has neither done nor attempted to do anything *ultra vires.* It has acquired from those who joined in its formation and who owned lands within the defined district water-rights and rights of way, for which it has paid by issuing its stock. With money raised by assessment it has established a pumping plant and it has developed and pumped water in periods of scarcity. It has sold no water to outsiders, and consequently has made no cash dividends, but has distributed to its stockholders in proportion to the shares held by them respectively all the water at its disposal. It has, in other words, made a dividend in kind. All this has been done, not in pusuance of any by-law formally inscribed in the records of the corporation, but solely in accordance with a common understanding of the stockholders, which, so far as these parties and this controversy are concerned, is no more to be questioned than if it existed in the form of a by-law.

The certificates of stock issued by the corporation were all in the form of that which is in controversy here, which is as follows:—

"No. 36, 8 shares, capital stock $36,000—360 shares $100 each.                    "Capistrano, Cal., June 4, 1897.

"This certifies that C. W. Thomas is entitled to eight shares of the capital stock of the Trabuca Water Company, transferable on the books of the company by indorsement hereon and surrender of this certificate.

"Richard Egan, Secretary.
"J. E. Bacon, President."

No by-laws were adopted or certificates of stock issued in conformity with section 324 of the Civil Code as amended in 1895, providing that shares of stock in a water company, when the section is complied with, shall be appurtenant to the land described in the certificate. But in this connection it is proper to note the fact that the corporation was formed, and its practice of distributing water to its stockholders established, more than three years before the passage of this amendment, and while it is true that nothing can be claimed by respondent under this law, it remains equally true that if before its enact-

ment the water-right became appurtenant to the tract devised to her by other lawful means the law has no invalidating effect upon the right so acquired.

The original certificate for the eight shares allotted to the six-acre tract in controversy was issued to J. P. Fuller at the time when he and others conveyed their water-rights to the corporation, in March, 1892. In August, 1893, he conveyed the land and the eight shares of stock to Albert Fuller by a deed containing express mention of the stock, which was thereupon transferred on the books of the company. In April, 1897, Albert Fuller conveyed the land without mention of the stock to Thomas. But upon demand of the latter, and without any other consideration than the price of the land, the certificate of stock was transferred to him and the transfer duly registered. There was no reason for this transfer except the understanding shared equally by grantor and grantee that the water-right evidenced by the certificate was part of the land and passed by the conveyance of the land. While the land was owned by the Fullers both before and after the incorporation of the company, the water represented by the eight shares of stock was used to irrigate it, and this use was continued by Thomas during the entire period of his ownership. The land in its natural state, without water for irrigation, would produce no crops other than barley and hay, and for that purpose would not be worth more than fifty dollars an acre. But the decedent set out an orchard of apples and walnuts on it, which were just coming into bearing at the date of the trial, and, according to the evidence, increased its value to four or five hundred dollars an acre with the water. Without the water the trees would die and the land revert to its original condition.

It would be a waste of time to elaborate the proposition that the water-right in controversy was appurtenant to the land devised to the respondent up to the time when J. P. Fuller delivered his deed to the corporation. The appellant seems to concede so much, but she contends that by that deed the water-right was segregated from the land and ceased to be appurtenant. To this proposition she cites the case of *Gould* v. *Stafford*, 91 Cal. 146, [27 Pac. 543]. But that case is only authority on the point that the owner of land with a water-right appurtenant can convey the right while retaining the

CXLVII. Cal.—16

land, and thus sever the connection. It does not follow, however, that when he and other owners in common of the source of supply convey their water-rights to a corporation for the mere purpose of convenience in the management and distribution of the water back to them according to their respective rights, there is any severance of the right from the land to which it was appurtenant. Such was the nature of the transaction here. There was a formal conveyance of the legal title of the several water-rights to the corporation, but simultaneously the grantors received certificates of stock which constituted them the beneficiaries of everything so conveyed in the proportion of their original interests. As stockholders they became entitled to receive their proportionate share of all that the company was authorized to divide. It had nothing but water to divide, and of that they received the same share and in the same manner and order in which they had received it before the conveyance. And the successive owners of the six-acre tract applied it after the conveyance to that tract as they had done before. All that happened was that a right which they had held and exercised under one title before the conveyance was held and exercised under a (formally) different title afterwards. There was in fact no moment of time when they lost the right to use the water, and there was no cessation of its use on the particular tract. Neither the corporation nor any other persons acquired any right to divert it to another use. And the question whether a water-right is appurtenant to a particular tract does not depend in the least degree upon the source of title to the water-right; it is made appurtenant to the land by use on the land for its benefit, and here the undisputed right of the Fullers and the decedent to receive eight hours' run of all the company's water out of every three hundred and sixty hours was made and continued appurtenant to the six-acre tract by use on the land in the irrigation of trees that greatly increased its value, and would perish without it. In view of these facts it is clear that the water-right remained appurtenant to the land, that it would have passed by conveyance of the land, and, if so, that it passed by the devise to respondent (Civ. Code, sec. 1311), and did not fall into the residue distributable to the appellant.

The principal argument of the appellant directed against this view is based upon the language of section 324 of the

Civil Code. That section as originally enacted, and as it stood at the date of the incorporation of the Trabuca Water Company, provided that whenever the capital stock of a corporation was divided into shares and certificates issued, the shares should be personal property and transferable by indorsement. It is evident that this provision related merely to the mode of transfer of the stockholder's interest in the corporation, making the indorsement and delivery of his stock certificate effective as between him and his vendee as a transfer of his interest in all the property of the corporation, whether real or personal. In 1895 this section was so amended as to except from its operation the stock of water companies upon their compliance with certain conditions,—that is to say, if they provided in their by-laws that water should only be sold, distributed, supplied, or delivered to owners of its capital stock, and that such stock should be appurtenant to certain lands described in the certificates, and if they recorded such by-laws in the counties where the lands were situated, and issued certificates accordingly, then such shares of stock so located could only be transferred with the lands as appurtenant thereto. As above stated, the conditions prescribed by this amendment were never complied with by the Trabuca Water Company, and its shares continue to be personal property for the purpose of transfer by mere indorsement. But it does not follow from this that the shares in controversy could not be appurtenant to the land. Conceding that they were so far personal property that the decedent might have transferred the water-right by indorsement of the certificate, and thereby have severed the water-right from his land, it remains undeniably true that the right represented by the certificate—the right to receive eight hours' run of water in his turn—was appurtenant to the land, though deemed personal property with reference to the mode of transfer. In this view the stock certificate was merely the evidence of a water-right, which right, though capable of severance from the land to which it had become appurtenant, never was alienated or diverted by the decedent in his lifetime, but remained appurtenant to the six-acre tract at the date of his will and at the time of his death. Therefore it was entirely proper to direct a transfer of the certificate to the respondent. It is her muniment of title and passes with the right of which it is the

evidence, just as title deeds should go to the distributee of real property.

Nor is it any objection to the decree that the corporation may be interested in the disposition of its stock. It is not easy to see how a corporation is a necessary party to a controversy between third parties as to the ownership of particular shares of its stock; but if the Trabuca Water Company has a possible interest in this controversy it is not bound by the decree and remains free to maintain its adverse rights whenever they are drawn in question.

There are many assignments of error upon rulings of the court admitting evidence of the facts here stated. We find no occasion to criticise these rulings. All the facts proved were material, and the evidence competent.

The decree of the superior court is affirmed.

Van Dyke, J., and Lorigan, J., concurred.

McFARLAND, J., concurring.—I concur in the judgment of affirmance, and generally in the opinion of the chief justice, but I base my concurrence mainly on the particular facts of this case as stated in that opinion, and on the consideration that the question to be decided involves the construction, not of a deed, but of a will, where great latitude is given to the language used in order to carry out the evident intent of the testator. It has even been held that while by a deed land will not pass as appurtenant to land, yet it may so pass by will when extrinsic evidence shows the evident intent with which the testator used certain language. (*Otis* v. *Smith*, 9 Pick. 293.) Of course, ordinarily, a grant of land does not carry, as appurtenant to the land, certificates of stock in a corporation; but there is nothing in the leading opinion which disturbs that general principle.