[No. 11297.  *En Banc.*  January 9, 1915.]

WILLIAM BERG, *Respondent*, v. YAKIMA VALLEY CANAL COMPANY, *Appellant*.[1]

WATERS AND WATER COURSES—IRRIGATION—MUTUAL WATER COMPANIES—WATER AS APPURTENANT TO LAND—RIGHTS OF LESSEE. The owner of shares of stock in a mutual water company, each of which constitutes a water right for one acre of land, entitling him to a given quantity of water actually carried in the company canal for the irrigation of the lands described in the certificate, holds such water right as appurtenant to his land; and provisions in a lease of the land, showing an intent of the parties that the lessee should be entitled to one-half the water right of the lessor, would operate as an assignment of the water right and pass same to the lessee as an appurtenance to the land; thus placing the lessee in such privity to the contract between the owner of the land and the water company as would entitle him to a right of action against the water company for negligence in failing to properly maintain and keep in repair the irrigation ditch.

SAME—MUTUAL WATER COMPANIES—TRANSFER OF STOCK ON BOOKS—NECESSITY. The failure of a holder of stock in a mutual water company to have the same transferred to his name upon the books of the corporation, after sale and assignment to him, would not affect the right of a lessee of the land and water rights to maintain

[1]Reported in 145 Pac. 619.

.an action against the company for negligence, where the company had already recognized the rights of his lessor by furnishing him the amount of water represented by his stock, and had never refused to furnish the lessee on the ground that the stock had not been transferred on the books of the corporation.

SAME—FAILURE TO FURNISH WATER—NEGLIGENCE—LIABILITY. A mutual water company organized for the purpose of supplying water to its stockholders is required to exercise reasonable care in maintaining its ditch in proper repair and in furnishing each stockholder his proportionate share of water, and failure therein constitutes negligence for which it may be made to respond in damages at the suit of a stockholder or of a lessee in privity with him (CHADWICK, CROW, FULLERTON, and MOUNT, JJ., dissenting).

SAME—NEGLIGENCE—EVIDENCE — SUFFICIENCY. Negligence in the maintenance and operation of an irrigation ditch is established where it appears that the company failed to clean out the ditch in the fall when it had a right to shut off the water for the purpose of cleaning out and making repairs; that no repair work was done during the winter, but was put off until spring, and then the water was shut off for repairs in disregard of the rights of patrons; that defendant did not supply the plaintiff with his proportionate share of the water that came down the ditch, but permitted stockholders occupying lands further up the ditch to take more than they were entitled to, and that by reason thereof plaintiff lost a large portion of his nursery stock.

DAMAGES—EXCESSIVENESS—LOSS OF GROWING CROP. A judgment for $18,500, for damages as the result of the loss of nursery stock cannot be regarded as excessive, where the plaintiff's evidence of the value of the nursery stock in its condition at the time of its loss by reason of failure to receive water was uncontroverted; in view of the proper measure of damages for the loss of a growing crop being either its value at the time of the loss, or the market value at the time of maturity, less the cost of tilling, harvesting and marketing.

APPEAL AND ERROR—INADEQUATE DAMAGES—FINDING—SUFFICIENCY OF EVIDENCE. A finding by the court, who has viewed the land, as to the amount of damages incurred from loss of a growing crop through defendant's negligence, will not be disturbed as inadequate, although the evidence is sufficient to sustain a finding in a greater sum.

COSTS—ALLOWANCE ON CROSS-APPEALS. Where both parties appeal and neither prevails, costs will not be allowed in the appellate court.

Cross-appeals from a judgment of the superior court for Yakima county, Grady, J., entered December 19, 1912, awarding damages to the plaintiff, in an action for breach of contract, tried to the court. Affirmed.

*Englehart & Rigg* (*A. L. Agatin*, of counsel), for appellant.

*Tomas H. Wilson* and *Bogle, Graves, Merritt & Bogle*, for respondent.

MAIN, J.—The purpose of this action was to recover damages alleged to be due to the negligence of the defendant in failing to properly maintain and keep in repair an irrigation ditch. The cause was tried to the court sitting without a jury. Judgment was entered for the plaintiff in the sum of $18,500. The defendant appeals.

The facts are substantially as follows: The defendant, Yakima Valley Canal Company, is a corporation organized and existing under the laws of the state of Washington. The object for which this corporation was formed, as set out in its articles, was to construct, maintain, and operate a canal to carry water for irrigation and domestic purposes from the Naches river, in the county of Yakima, to the lands owned by its stockholders, situated in that county and in township 13, range 18 E., W. M. The water was to be furnished at cost to the owners of lands upon the line of the canal or lateral branches, who should share in the cost of construction, or become owners of the corporate stock. By the amended articles of incorporation, the capital stock of the corporation was $4,200, divided into 4,200 shares of the par value of $1 per share. No dividends were to be paid upon this stock. The canal, after it was constructed, was to be maintained and kept in repair by assessments each year made upon the stockholders. The certificates of stock which were issued provided that the owner of the shares therein specified, in accordance with the articles of incorporation and the by-

laws, was entitled for every share of stock to one forty-two hundredth part of the volume of water carried by the canal, so long as the water should be used upon the land described upon the back of the certificate.

On March 31, 1909, one William Steward became the owner, by purchase from E. B. Preble, of certain lands which were under the ditch. The certificates of stock which entitled Preble to water to be used upon this land were on this date assigned to Steward, but were not transferred upon the books of the corporation until February 21, 1911. On the 27th day of November, 1909, Steward leased, for a period of two years, one hundred acres of the land above mentioned to William Berg, the plaintiff. This lease provided that Berg would plant the land leased in apple trees of specified varieties, and would cultivate and care for the same during the period covered by the lease in a good and husbandlike manner. During the time covered by the lease, Berg had the right to plant the entire tract to nursery stock, provided he should not plant any nursery stock, or any other crops, nearer than three feet distant from the apple trees. The lease also provided that Berg should have the right to use a specified portion of the water from the Yakima Valley Canal Company, which was then owned by Steward and covered by the certificates which had been assigned and delivered to him by Preble. Berg was a nurseryman, and immediately entered into possession of the land for the purpose of engaging in the nursery business somewhat extensively. During the spring of the year 1910 he planted approximately seventy acres of land in nursery stock. For this purpose he employed about twenty-five men.

Berg claims that the defendant company was negligent in failing to properly maintain and take care of the irrigation ditch during the previous fall and winter, and for that reason he did not receive sufficient water during the spring of 1910 to grow the nursery stock which he had planted. By reason

of the shortage of water, Berg claims damages in the sum of $73,150.

At the conclusion of the trial, the court, at the request of one party and with the consent of the other, in company with a representative of each, examined the land. Other facts will be mentioned as they may become pertinent in connection with the consideration of the points urged for a reversal.

The questions to be determined are: First, the right of the plaintiff to maintain this action. Second, is the defendant company liable in damages for negligently failing to properly maintain and keep in repair the irrigation ditch? Third, does the evidence sustain the charge of negligence? And fourth, the amount of the damages.

I. In order to reach the real question in the case without unnecessary preliminary discussion, it will be admitted, for the purposes of this opinion, (a) that the Yakima Valley Canal Company is what is known as a mutual ditch company —that is, that the company was formed for the purpose of supplying water to its stockholders only, and not to the public generally; (b) that the action must be founded either in tort or contract; (c) that the present action is not one sounding in tort; (d) that an action based upon a contract must be brought by one who is either a party or stands in a relation of privity; and (e) that Berg was not a party to the contract. If, therefore, the present action can be maintained by Berg, it is upon the ground of privity. Whether that relation existed between Berg and the canal company depends upon whether, when Berg took his lease, a right to the water passed to him as an appurtenance to the land. It will hardly be denied that, if the water right passed as an appurtenance to the land, his right to maintain the action is well founded.

In a mutual company, the stock certificate represents the water right. A transfer or sale of the certificate may be made separate from the land for use on other land, and will

transfer the water right. But where it has not been thus sold or transferred, the question whether the water right is appurtenant to the stockholder's land is generally a question of fact, as is also whether on a sale or transfer of the land, the water right passes as an appurtenance. In 2 Wiel, Water Rights in the Western States (3d ed.), § 1269, speaking upon this question, the author states the rule as follows:

"So long as the company remains purely a mutual one, the certificate of stock represents the water right. A transfer or sale of the certificate is governed by much the same rules as those elsewhere considered regarding transfers of water rights. Whether the water right is appurtenant to the stockholder's land is a question of fact in each case, as is also whether on a sale of the land the water right passes as appurtenance. A sale of the certificate may be made separate from the land for use on other land and will transfer the water right, where the change does not injure other existing water users by the new place of use (who alone, however, can raise the objection that they are injured), the transfer being complete when (and not until) entered on the books of the company. On the other hand, in the absence of any separate sale of the certificate or of any other evidence of any express intention to make a severance, a sale of the land on which the water is used will carry the water right and right to the certificate as an appurtenance."

In the present case, the water right, as evidenced by the certificate, was appurtenant to the land. The amended articles of incorporation specify that:   .

"Each share of stock of this corporation shall constitute a water right for one acre of land, and shall, when duly issued and delivered, vest in the lawful owner thereof, his heirs and assigns, title to óne forty-two hundredth (1-4200) part of the water at any time actually carried by said canal . . ."

The by-laws of the corporation adopted by the stockholders specify the form of the certificate. The certificate provides that the owner of each certificate of stock shall be entitled to:

"One forty-two hundredth part of the volume of water carried by the canal of said corporation for each share of

stock represented by this certificate, so long as he shall use said water upon the land described in the certificate upon the back hereof, and no longer, provided, however, that no water can be taken from said canal by virtue of the ownership of said stock until the certificate upon the back hereof has been filled out, signed and sealed by the secretary of this corporation."

The land formerly owned by Preble and transferred to Steward, was described upon the back of the certificates as issued to Preble and assigned and delivered to Steward at the time of the purchase of the land by him. Considering the respective provisions of the articles of incorporation, the by-laws and the stock certificate, it is plain that it was the intention to make the water right represented by the stock appurtenant to the land.

But it is contended that, even if the water is appurtenant to the land, it did not pass to Berg under the terms of the lease, in which it was provided:

"That he (Berg) will accept as the full water right for said land one-half of the water right now owned and held by said first party (Steward) to wit, one-half of one hundred shares of capital stock in the Yakima Valley Canal Company's main canal."

For what purpose was this provision placed in the lease? Steward desired the land leased planted in apple trees. Berg agreed to plant the trees, tend, irrigate and care for the same during the period covered by the lease. Berg had the right for his own purposes of planting the entire tract to nursery stock, except that he should not encroach upon the apple trees closer than three feet. The use of the water upon the land was absolutely essential to any practical attempt to carry out the provisions of the lease. Without the water, the purpose could not be accomplished. While the language used is not as specific as it could have been, it is yet quite sufficient to make the intention of the parties evident. The lease transferred to Berg the right to use the water as therein specified. The lease, for the period of time covered by it,

operated as an assignment of the water right as therein provided.   In 3 Kinney, Irrigation and Water Rights (2d ed.), § 1484, it is said:

"So, again, where a tract of land is conveyed, 'with the water right appurtenant thereto,' or a similar expression used in the deed, and the shares of stock representing the water right were not assigned to the purchaser, such a conveyance must be deemed in law an assignment, and the purchaser can compel a transfer of the stock and delivery to him of all water which was actually appurtenant to the land at the time of the transfer."

The water, as appurtenant to the land, having passed to Berg by virtue of the lease, established his privity, and as a result his right to maintain the action.   In *Booth v. Chapman*, 59 Cal. 149, the defendant had agreed to sell to the plaintiff 20 acres of land with the water right appurtenant. The water right had been purchased by Chapman from an incorporated irrigation ditch company.   The plaintiff not receiving the amount of water which he claimed he was entitled to brought an action against his vendor.   The court there held that the action could not be maintained, but should have been brought against the corporation which controlled the water.   It was said:

"The contract was delivered to the plaintiff, and by virtue of it he took and still retains possession of the land, and as we construe the contract he became thereby invested with the water right appurtenant to the land.  If so, he must look to the corporation which controls the water for the *pro rata* share belonging to said lot.  It does not anywhere appear in the record that the defendant ever agreed to deliver any water to the plaintiff; and the court did not so find."

As sustaining the contention that Berg cannot maintain the action, the authorities cited by the defendant which most nearly approach the question will here be considered.   They are:  *Knowles v. Leggett*, 7 Colo. App. 265, 43 Pac. 154; *Barstow Irr. Co. v. Cleghon* (Tex. Civ. App.), 93 S. W. 1023; *First Nat. Bank of Longmont v. Hastings*, 7 Colo.

App. 129, 42 Pac. 691; *Oligarchy Ditch Co. v. Farm Inv. Co.*, 40 Colo. 291, 88 Pac. 443; *George v. Robinson*, 23 Utah 79, 63 Pac. 819; 3 Farnham, Waters and Water Rights, p. 2001.

In both the *Knowles* and *Barstow* cases, the courts were considering leases where the owner of land had undertaken to furnish the tenant with a certain amount of water. In neither case was it attempted in the lease to transfer the water right to the lessee. There is an obvious distinction between a contract whereby the landlord undertakes to furnish water to his tenant and a contract whereby he attempts to transfer the right to the water itself to the tenant, as in the present case.

In the *First Nat. Bank* and *Oligarchy Ditch Co.* cases, there will be found language sustaining the defendant's contention. But in neither case was it necessary in deciding the cause then before the court to pass upon the question. In the *First Nat. Bank* case, there stood, in the name of one Dickson, stock upon the books of the ditch company. The bank brought suit and attached the stock. Prior to this time, the land on which the water represented by the stock was used had been sold and transferred by Dickson to a third person. Construing a statute then in force in the state of Colorado, it was held that an attaching creditor was not required to look beyond the books of the corporation to determine who owned the stock. In the *Oligarchy Ditch Co.* case, there were two corporations, one known as Oligarchy Ditch Company, which was the owner of a ditch with an appropriation of water attached thereto; the other was the Oligarchy Extension Ditch Company. The latter corporation owned no water right and was organized solely as a conduit company. The stock in the extension company did not represent independent water rights, but only the right to carry water obtained from the Oligarchy Ditch Company. It was held that a deed conveying the land, together with all the rights to use water for irrigating the premises, did not

include stock in the extension company. This company owning no water right, but being only a carrying company, it is plain that the right to have water carried which the stock represented would not pass as appurtenant to the land. There would seem to be a distinction between stock in a ditch company which represented the right to the water which had been appropriated and owned by the company, and stock in a corporation which owned no water rights, and only carried water for its members which they owned evidenced by certificates of stock in another corporation.

Farnham on Waters and Water Rights, *supra*, states the doctrine broadly that water represented by shares of stock cannot be said to be appurtenant to land. In support of this statement the case of *George v. Robinson, supra*, only is cited. An examination of that case will disclose that it does not support the declaration of the text writer. There the question arose between the vendor and the vendee of land. The vendee claimed the right to water as appurtenant under the covenant of warranty. Nowhere in the deed was there any express reference to water rights or water for irrigation or other purposes. It was held that the right to the water did not pass under the warranty. Had the right to the water been expressly mentioned or referred to in the deed, as it was in the Berg lease, the court there recognized that the rule would have been different when it said:

"From an examination of the evidence, the conclusion is irresistible that the water rights, in question, were treated by the owners as personal property, constituted no part of the realty, and not being expressly mentioned or referred to in the deed, were not conveyed with the land, and that there is no proof that warranted the court in finding that the water was appurtenant to the land, or that the water rights were included in the warranty."

But even if it were conceded that the authorities just reviewed do support the defendant's contention, we yet think the rule stated by Wiel, *supra*, is founded upon the better

reason and in its practical operations would be more just and equitable. To cause arid lands to become valuable for agricultural purposes, water is absolutely essential. The doctrine which makes it a question of fact whether the water right is appurtenant to the land and whether it passes by a lease or other conveyance, seems to us sound.

Some claim is made that the corporation cannot be held liable because the stock still stood upon its books in the name of Preble. But this objection is not well founded. Prior to the time of the lease from Steward to Berg, the company had recognized the right of Steward in furnishing him water which was represented by the certificates. As to Berg, the officers and representatives of the corporation at no time refused to furnish him water because the stock had not been transferred upon the books of the corporation. There was no dispute between them and him as to the amount of water to which he was entitled. Had the officers of the company refused to furnish him water until the stock had been transferred upon the books of the company, a different question would be presented, upon which we now express no opinion.

II.    It is argued that a corporation organized for the purpose of furnishing water to its stockholders is not liable even to the stockholders on the ground of negligence, and therefore it would not be liable at the suit of a tenant. It must be admitted that, if the corporation would not be liable to its stockholders, a tenant of a stockholder would stand in no more advantageous relation. Little space need be devoted to the discussion of this question. One of the purposes of the corporation set out in its articles was "To construct, maintain and operate a canal to carry water for irrigation and domestic purposes . . . to lands owned by its stockholders." By the by-laws, it was provided that one of the purposes for which the annual water rental was charged was to meet the maintenance and operation of the canal. The rule is that, where a corporation is organized for the purpose of supplying water to its stockholders, it is its duty to exer-

cise reasonable care in maintaining the ditch in proper repair and to see that each stockholder receives his proportionate share of the water. Failing in this duty the corporation is guilty of negligence, and may be compelled to respond in damages at the suit of a stockholder. *O'Connor v. North Truckee Ditch Co.*, 17 Nev. 245, 30 Pac. 882; *Rocky Ford Canal, Reservoir, Land, Loan & Trust Co. v. Simpson*, 5 Colo. App. 30, 36 Pac. 638.

In the *O'Connor* case, speaking upon this question, it was said:

"The stated objects of the corporation, as expressed in the certificate and the stipulations in the deed, clearly define the duties imposed upon the corporation. By the terms and conditions thereof the corporation is bound to keep the main ditch supplied with water, and to regulate and divide its use among the several stockholders in accordance with their respective interests, and it must necessarily follow that for any neglect or failure to properly discharge its duty in this respect, it would be liable to the stockholder who is injured thereby to the extent of the damages suffered by him."

III. It is next claimed that the evidence does not show negligence. The trial court found that the defendant was chargeable with negligence in two respects, first, that it failed to properly care for its canal during the fall of 1909 and the following winter and spring; that this negligence consisted in omitting to clean the canal so that it would carry the quantity of water that it was intended to carry, and that by reason of this negligence the plaintiff did not receive the water as early in the spring as it was needed and as it was the duty of the defendant to furnish it; and second, that the defendant did not supply the plaintiff with his proportionate share of the water that came down the ditch, but permitted other stockholders occupying lands further up the ditch to take a greater portion of the water than they were entitled to; and that by reason of this negligence the plaintiff lost a portion of his nursery stock.

The trial judge filed in the case a written opinion. Speaking on the question of negligence, he therein said:

"The testimony of the officers in charge of the company during the spring of 1910, shows a clear case of negligence of a very pronounced kind. Very little effort was made to clean out any part of the ditch during the fall of 1909 after the time when it had a right to shut off the water for the purpose of cleaning out and making repairs. No repair work seems to have been done during the winter. It was all put off until the spring and then the directors seem to have taken their time about everything. They turned the water on when it suited their pleasure and shut it off to make repairs which might have been made before, showing an utter disregard for the rights of the patrons of the company. No shortage of water is claimed, no serious breaks in the ditch, causing unavoidable delays, in fact, no substantial reason is shown why water should not have been delivered by the first of April, and delivered with reasonable continuity throughout the entire season sufficient to have prevented the loss sustained by the plaintiff."

The views of the trial judge as expressed in the findings of fact and in the written opinion are abundantly sustained by the evidence. It would unnecessarily prolong this opinion and serve no useful purpose to review the testimony upon this question.

IV. The defendant in its brief proclaims vigorously against the amount of the judgment. But this invective overlooks the evidence in the record. The plaintiff's evidence shows the value of the nursery stock in its condition at the time of its loss by reason of the failure to receive water. The defendant offered no directly controverting evidence. The proper measure of damages for the loss of a growing crop is the value of the crop at the time of the loss. This value may be arrived at either by evidence showing the reasonable value of the crop upon the land at the time, or the market value at the time of maturity, less the cost of tilling, harvesting and marketing. *Shotwell v. Dodge*, 8 Wash. 337, 36 Pac. 254;

*Fuhrman v. Interior Warehouse Co.*, 64 Wash. 159, 116 Pac. 666, 37 L. R. A. (N. S.) 89.

The defendant offered evidence tending to show the inadaptability of the land for the purpose of producing nursery stock. The trial court, after the conclusion of the trial, as already stated, viewed the land. The plaintiff is prosecuting a cross-appeal claiming that the court erred in not making the award of damages sufficiently large. It is true that the evidence in the record would have sustained a larger verdict, had the cause been tried to a jury and such a verdict returned. This, however, would not be a reason for our disturbing the judgment of the trial court.

Both parties having appealed, and neither having prevailed, no costs will be allowed in this court.

The judgment will be affirmed.

ELLIS, GOSE, MORRIS, and PARKER, JJ., concur.

CHADWICK, J. (dissenting)—I dissent from the holding of the majority. Lack of time, owing to the change to be made in the personnel of this court within the next few days, prevents me from elaborating my views or going into the authorities. It will be enough to say that this action is brought against a mutual ditch company, not organized for profits, of which Steward was a member. Upon the theory of the majority, he is as guilty of negligence as any other member of the company and could not maintain an action in his own behalf. Berg stands in his shoes and can claim no greater right against the company than Steward could claim. Furthermore, a mutual ditch company should not be held to answer for the torts of one or more of its members. To do so, would charge the innocent as well as the guilty and put upon the innocent the burden of keeping a private contract made by one of the co-owners and in which they had no interest whatever.

In consultation I asked the majority to tell me, or to state in the opinion, how the judgment in this case could be ex-

ecuted. The question was not answered nor has it been answered in the opinion. The answer to that question furnishes the key to the whole superstructure of this case. As it now stands, plaintiff has a judgment, which, in my opinion is a paper judgment which cannot be enforced by taking the property or money of the unoffending members. They owed Berg no contract duty, and no implied duty, and the water which they had bought and paid for is as essential to the tillage of their land as it was to the land leased by Steward to Berg. Surely no court will ever hold that the judgment can be executed by a sale of the ditch property. If it should, then may the property of the innocent and unoffending be taken at will, and justice will be a name without substance.

CROW, C. J., FULLERTON, and MOUNT, JJ., concur with CHADWICK, J.