## In re JOHNSON'S ESTATE.

No. 4102.   Decided July 26, 1924.   (228 Pac. 748.)

1. WILLS—CONSTRUED IN ACCORDANCE WITH TESTATOR'S INTENTION.
   Under Comp. Laws 1917, §§ 6347, 6348, intention of testator is
   ultimate object to be kept in mind and to which all rules must
   yield in construction of a will.[1]

2. WILLS—ERRONEOUS DESCRIPTION HELD NOT TO INVALIDATE DEVISE.
   Under Comp. Laws 1917, § 6370, testator's error in description
   of land did not invalidate devise, where misdescription was
   made to appear by extrinsic evidence of boundaries; court in
   such case being able to correct error.

3. WILLS—ERROR IN DESCRIPTION CAN BE REJECTED, IF LAND IN-
   TENDED TO BE DEVISED CAN BE IDENTIFIED. False or repugnant
   words in description may be rejected, if there remains sufficient
   description, aided by circumstances surrounding testator when
   he made will, to identify land intended to be devised, and land
   thus identified will pass under will to devisee.

4. WILLS—GREATER LATITUDE ALLOWED IN CONSTRUCTION OF WILL TO
   CARRY OUT INTENTION THAN IN CONSTRUCTION OF DEED. There is
   greater latitude in construing will, in order to carry out evi-
   dent intention of testator, than in construction of a deed.

5. WILLS—WATER RIGHTS APPURTENANT TO LAND HELD TO PASS TO
   DEVISEES, THOUGH NOT SPECIFICALLY MENTIONED IN WILL. Where
   land was of no value without water rights appurtenant thereto,
   the water rights passed to devisees, though not specifically
   mentioned in will, under Laws 1919, c. 67, §§ 15, 16.[2]

Appeal from District Court, Third District, Salt Lake
County; *Wm. M. McCrea*, Judge.

In the matter of the estate of Olaus Johnson, deceased.

From a judgment distributing the estate, Olaf Johnson and
others appeal.

[1] *In re Poppleton's Estate*, 34 Utah, 285, 97 Pac. 138, 131 Am. St.
Rep. 842; *In re Campbell*, 27 Utah, 361, 75 Pac. 851; *Rumel v. Solo-
mon*, 54 Utah, 25, 180 Pac. 419.

[2] Distinguishing *George v. Robison*, 23 Utah 79, 63 Pac. 819.
See 40 Cyc. pp. 1382, 1386, 1528, 1533, 1559.

REVERSED, with directions.

*A. A. Duncan,* and *C. M. Nielsen,* both of Salt Lake City, for appellants.

*David W. Moffat,* of Murray, for respondent.

CHERRY, J.

This appeal is from the judgment of the district court of Salt Lake county, Utah, distributing the estate of deceased under his will which was duly proved and admitted to probate.

The controversy arises over the construction of the will with relation to the description or identity of the property intended as the subject of a particular devise. The facts are not disputed.

The deceased had two wives, by one of whom he had six children and by the other four. After the death of both of his wives, the deceased made a will bequeathing and devising all of his property to his children. The provisions of the will relating to this controversy are as follows:

"2. I direct that my executor shall cause to be measured out eleven acres of my land, to begin at the 44.2 rods north of the s. e. corner of the s. e. quarter of Sec. 24, Tp. 2 S., of range 1 W., S. L. M., and then go north, west, south and east, to make it eleven acres, and the said eleven acres of land to be equally divided between the following of mine children: To Olaf Johnson, Thorvald Johnson, Samuel J. Johnson, Charles A. Johnson, Anne M. Carlson, and Clara S. Boggess. If the said land cannot be divided satisfactory between my said children, that the executor may sell the same and divide the money equally between them.

"3. I will my other children hereinafter named shall understand that my reason for giving the said eleven acres to the above-named children is because I gave eleven acres of land to my wife Pauline, which was divided between the other children of Pauline, their mother.

"4. All the residue outside the said eleven acres above mentioned of my farm land, I hereby instruct my executor to sell to the highest bidder for cash, and divide the proceeds therefrom, after all expenses connected with my last illness, funeral charges and expenses of administration shall have been fully paid, the balance

of cash, as aforesaid, to be divided equally between my children as follows: To Olaf Johnson, Thorvald Johnson, Samuel J. Johnson, Charles A. Johnson, Anne M. Carlson, Clara S. Boggess, Henry Johnson, Caroline Pedersen, Mariane Sharp and Hilda Middleton, to share and share alike between all of my children."

Appellants are the devisees mentioned in clause 2 of the will, and respondents are the other children of the testator.

The testator died seized and possessed of two, contiguous tracts of land, designated as tract A, which contains 10.994 acres, and tract B, which contains 3.65 acres. Tract A is situated west of tract B. Under an order of court tract B was sold by the executor to pay necessary costs of administration, etc., and at the time of distribution tract A was the only real estate remaining.

The particular point of beginning of the eleven acres of land directed to be measured off, as described in clause 2 of the will, is not upon any land owned by the testator at the time he made the will or since, but is situated about 12.5 rods east and 11.2 rods south of the nearest corner of tract A, which is the nearest land to the point mentioned owned by the testator. It was therefore impossible to begin at the point described in the will and describe eleven acres of the testator's land.

The executor having measured it off, appellants petitioned the trial court to distribute tract A to them pursuant to the devise contained in the clause of the will above quoted. Respondents, claiming the devise to be void for uncertainty of description, opposed the petition of appellants, and prayed for distribution under the residuary clause of the will to all of the children of testator. The trial court concluded that it was bound by the particular starting point described in the will, and, projecting a line from that point north, west, south, and east, described eleven acres of land, which included five acres of land not owned by the testator and six acres of tract A left by the testator. An order was made distributing the six acres thus included of tract A to appellants in satisfaction of the devise in question, and the remaining five acres of tract A were distributed to the residuary legatees named in the will.

To reverse the judgment of distribution and to obtain a decree distributing the whole of tract A to them, the appellants have appealed to this court.

"A will is to be construed according to the intention of the testator." Comp. Laws Utah 1917, § 6347.

"In case of uncertainty arising upon the face of a will as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking in view the circumstances under which it was made exclusive of his oral declarations." Comp. Laws Utah 1917, § 6348.

The intention of the testator "is the ultimate object to be kept in mind and to which all rules must yield" (*In re Poppleton's Estate,* 34 Utah, 285, 97 Pac. 138, 131 Am. St. Rep. 842), and "is the polar star which should guide the court in its decision" (*In re Campbell,* 27 Utah, 361, 75 Pac. 851; *Rumel* v. *Solomon,* 54 Utah, 25, 180 Pac. 419).

That it was the intention of the testator to devise to appellants eleven acres of the land owned by him at the time of the making of the will there can be no possible doubt. The positive words of the will, "I direct that my executor shall cause to be measured out eleven acres of my land * * * to be divided between the following of mine children," and the reason for making the devise as expressed in the succeeding clause, leave no uncertainty of what was intended.

The question is, Shall the plain intention of the testator be defeated and the devise fail because of the erroneous or false description contained in the will?

Comp. Laws Utah, 1917, § 6370, provides:

"When applying a will, if it is found that there is an imperfect description, or that no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence; but evidence of the declarations of the testator as to his intentions cannot be received."

By extrinsic evidence of the boundaries of the testator's land, the error or misdescription contained in the will was made to appear. It is clear that eleven acres of testator's land cannot be measured out by commencing at the par-

ticular point described in the will.  In the light of        **2**
the extrinsic evidence the testator's description of the
initial point is a plain error, and presents, we think, a situ-
ation contemplated by the statute last above quoted, requiring
the error to be corrected.  But, independent of the statute
quoted, the devise in question cannot be defeated or di-
minished on account of the error in the description of the
land.

The rule is well settled that false or repugnant words con-
tained in the description of land, devised by will, may be
rejected, if there remains a sufficient description, aided by
the circumstances surrounding the testator when he made the
will, to identify the land intended to be devised; and the
land thus identified will pass under the will to the devisee.
*Patch* v. *White,* 117 U. S. 210, 6 Sup. Ct. 617, 710, 29 L. Ed.
860; *Taylor* v. *McCowen,* 154 Cal. 798, 99 Pac. 351; *Albury*
v. *Albury,* 63 Fla. 329, 58 South. 190; *Collins* v. *Capps,* 235
Ill. 560, 85 N. E. 934, 126 Am. St. Rep. 232; *Pate* v. *Bushong,*
161 Ind. 533, 69 N. E. 291, 63 L. R. A. 593, 100 Am. St. Rep.
287; *Whitehouse* v. *Whitehouse,* 136 Iowa, 165, 113 N. W.
759, 125 Am. St. Rep. 250; *Scarlett* v. *Montell,* 95 Md. 148,
51 Atl. 1056; *Board of Trustees, etc.* v. *May,* 201 Mo. 360, 99
S. W. 1093; *Seebrock* v. *Fedawa,* 33 Neb. 413, 50 N. W. 270,
29 Am. St. Rep. 488; *Hawkins* v. *Young,* 52 N. J. Eq. 508,
28 Atl. 511.

An exhaustive review of the foregoing cases, with many
others, is contained in a note following *Lomax* v. *Lomax*
(Ill.) 6 L. R. A. (N. S.) 942.  The learned annotator con-
cludes his review as follows:

"The rule governing such cases may well be thus formulated:
If the will containing the devise under consideration contains a
complete, accurate description of a tract of land not owned by the
testator, and no language whatever pointing in any wise to an
intention to devise another tract which he did own, the devise fails
—it cannot be made to apply to a different parcel by extrinsic evi-
dence; but if, anywhere in the will, there can be discovered words
connecting the devise under consideration with a tract of land
that belonged to the testator, or indicative of his intention by such
devise to devise a tract of land owned by him, courts will seize
upon such words to make effectual the testator's intended devise."

A later annotated case upon the subject is *Re Boeck*, 160 Wis. 577, 152 N. W. 155, L. R. A. 1915E, 1008.

The foregoing principles of law are decisive of this case, and enable us to give full effect to the manifest intention of the testator. The initial point described in the will for measuring out the eleven acres of land devised to appellants is erroneous and false, and is repugnant to the plain intention of the testator. The same is rejected and stricken out. There remains in the will the words "I direct that my executor shall cause to be measured out eleven acres of my land, to begin * * * north of the s. e. corner of Sec. 24, etc., then go north, west, south and east to make it eleven acres of land to be equally divided between the following of mine children," etc. This interpretation of the devise fully supports the selection by the executor of tract A as the land to which appellants are entitled under the will. It follows that the trial court erred in refusing to distribute the whole of tract A to appellants.

A further question arises respecting the water right used upon the testator's land. Deceased left a water right represented by 56½ shares of the capital stock of the Union & Jordan Irr. Company, which, during his lifetime, had been used for the irrigation of the land owned and left by him. The water rights were appraised together with and as a part of the land. When tract B was sold, 12½ shares of the water stock was transferred with it. Appellants, claiming the 44 remaining shares of water stock as an appurtenant to tract A of the real estate, prayed for its distribution to them. It was alleged and not denied that the water right was used in connection with the land, and that the land is of little or no value without the water right. The trial court found that the water right had been used for the irrigation of the lands owned by the testator, but that notwithstanding such use the same was personal property, and was not included in the devise to appellants. The question is whether a water right so owned and used will pass by the devise, without mention, with the land as an appurtenance.

By Laws Utah 1919, c. 67, it is provided:

"Sec. 15. A right to the use of water appurtenant to the land shall pass to the grantee of such land, and, in cases where such right has been exercised in irrigating different parcels of land 'at different times, such right shall pass to the grantee of any parcel of land on which such right was exercised next preceding the time of the execution of any conveyance thereof; subject, however, in all cases to payment by grantee of any such conveyance of all amounts unpaid on any assessment then due upon any such right; provided, that any such right to the use of water, or any part thereof, may be reserved by the grantor in any such conveyance, by making such reservation in express terms inserted in such conveyance, or may be separately conveyed.

"Sec. 16. Water rights shall be transferred by deeds, in substantially the same manner as real estate, except when they are represented by shares of stock in a corporation, and such deeds shall be recorded in books kept for that purpose," etc.

The latter provision is obviously intended for the conveyance of water rights in cases where the water rights are severed from the land upon which the water has been used, and separately conveyed. In such a case, if the water right is represented by shares of stock in a corporation, the plain implication is that it may be transferred by a transfer of the certificate of stock, in the ordinary manner, as personal property. But that does not necessarily mean that water rights thus represented may not be an appurtenant to the land upon which the water is used, and pass as such with a conveyance of the land.

In 2 Weil on Water Rights (3d Ed.) § 1269, the author says:

"So long as the company remains purely a mutual one, the certificate of stock represents the water right. A transfer or sale of the certificate is governed by much the same rules as those elsewhere considered regarding transfers of water rights. Whether the water right is an appurtenant to the stockholder's land is a question of fact in each case, as is also whether on a sale of the land the water right passes as (an) appurtenance. . A sale of the certificate may be made separate from the land for use on other land and will transfer the water right. * * * On the other hand, in the absence of any separate sale of the certificate or of any other evidence of any express intention to make a severance, a sale of the land on which the water is used will carry the water right and right to the certificate as an appurtenance."

This section is cited and approved in *Berg* v. *Yakima C. Co.*, 83 Wash. 451, 145 Pac. 619, L. R. A. 1915D, 292.

In *Ireton* v. *Idaho Irr. Co.*, 30 Idaho, 310, 164 Pac. 687, appellant held certificates of stock in a mutual irrigation company, not organized for profit, as pledgee. Without notice of the pledge, respondent took from the owner, a mortgage on the land upon which the water was used, "together with any and all water rights owned by the mortgagors or belonging to or connected with the premises." · In deciding that respondent's mortgage was a superior lien upon the land and the water right appurtenant thereto, including the shares of stock, the court said:

"It is contended by appellant that the shares of stock in the operating company are personal property, and that the water right passed by assignment of them, and did not become subject to the mortgage on the land. While shares of stock in an ordinary corporation, organized for profit, are personal property (section 2747, Rev. Codes; *State* v. *Dunlap*, 28 Idaho, 784, and cases therein cited on page 802, 156 Pac. 1141), and while this court has held shares in an irrigation· company to be personal property (*Watson* v. *Molden*, 10 Idaho, 570, 79 Pac. 503), the fact must not be lost sight of that a water right is, as heretofore shown, real estate, and that in case of a mutual irrigation company, not organized for profit, but for the convenience of its members in the management of the irrigation system and in the distribution to them of water for use upon their lands in proportion to their respective interests, ownership of shares of stock in the corporation is but incidental to ownership of a water right. Such shares are muniments of title to the water right, are inseparable from it, and ownership of them passes with the title which they evidence. *In re Thomas' Estate,* 147 Cal. 236, 81 Pac. 539; *Berg* v. *Yakima Valley Canal Co.,* 83 Wash. 451, 145 Pac. 619, L. R. A. 1915D, 292."

In *Woodstone M. & T. Co.* v. *Dunsmore C. W. Co.,* 47 Cal. App. 72, 190 Pac. 213, the syllabus on the subject now being considered is as follows:

"Where the owners of water rights appurtenant to their several tracts of land formed a mutual corporation and transferred their water rights to the corporation in exchange for stock representing the right to water, the water right remained appurtenant to the land notwithstanding the formal change in ownership and passed to a mortgagee of the land and appurtenant water rights as against a subsequent execution buyer of the stock which still stood on the corporate books in the name of the mortgagor."

In, the case of *George* v. *Robison*, 23 Utah, 79, 63 Pac. 819, the syllabus, as published, is in conflict with the doctrine of the foregoing cases. But we think the decision itself is distinguishable, in part at least, on account of the peculiar facts in the case and the conclusion reached. The action was to recover for breach of warranty in a deed conveying land and appurtenances. Water rights represented by shares of stock in a corporation had been used on the land; the water rights were not owned by the grantor in the deed, but were owned by a third person, who, subsequent to the conveyance, transferred the water rights away from the land conveyed. Under the evidence the court held that the water rights in question constituted no part of the realty, and not being expressly mentioned or referred to in the deed, were not conveyed with the land, and that there was no proof that warranted the court in finding that the water was appurtenant to the land, or that the water rights were included in the warranty. It is true that the decision is based largely upon the argument that the shares of stock representing the water rights in question were personal property and therefore not capable of being appurtenant to real estate. This is the general rule with respect to shares of stock in ordinary corporations, organized for pecuniary gain. But we think the rule is not absolute, and should not apply to shares of stock in an irrigation company which is not organized for profit but for the convenience of owners of water rights in the regulation and distribution of the water to which they are entitled. This distinction was not considered in the opinion of the court and there were other controlling factors in the case, for which reason the general rule there expressed should be modified, when applied to a case like the one at·bar.

What has been said relates to the rule in conveyances of water rights by contract. The case before us is in the interpretation, not of a deed, but of a will, in which case there is a greater latitude of construction in order to carry out the evident intention of the testator. *Otis* v. *Smith*, 9 Pick. (Mass.) 293.

In *Re Thomas' Estate*, 147 Cal. 236, 81 Pac. 539, was a

case very similar to the instant case. A devise was made of "six acres of land situate in Orange county, state of California, purchased by me from Albert Fuller in the year A. D. 1897 or 1898." Water represented by shares in a corporation organized to distribute water rights to its stockholders had been used to irrigate the land designated, which materially increased the value of the land. The court held that the shares of stock representing the water right passed with the devise without mention as an appurtenance. In the opinion Beatty, C. J., says:

"It does not follow, however, that, when he and other owners in common of the source of supply convey their water rights to a corporation for the mere purpose of convenience in the management and distribution of the water back to them according to their respective rights, there is any severance of the right from the land to which it was appurtenant. Such was the nature of the transaction here. There was a formal conveyance of the legal title of the several water rights to the corporation, but simultaneously the grantors received certificates of stock which constituted them the beneficiaries of every thing so conveyed in the proportion of their original interests. As stockholders they became entitled to receive their proportionate share of all that the company was authorized to divide. It had nothing but water to divide, and of that they received the same share and in the same manner and order that they had received it before the conveyance. And the successive owners of the six-acre tract applied it after the conveyance to that tract as they had done before. All that happened was that a right which they had held and exercised under one title before the conveyance was held and exercised under a (formally) different title afterwards. There was in fact no moment of time when they lost the right to use the water, and there was no cessation of its use on the particular tract. Neither the corporation nor any other persons acquired any right to divert it to another use. And the question whether a water right is appurtenant to a particular tract does not depend in the least degree upon the source of title to the water right. It is made appurtenant to the land by use on land for its benefit, and here the undisputed right of the Fullers and the decedent to receive 8 hours' run of all the company's water out of every 360 hours was made and continued appurtenant to the six-acre tract by use on the land in the irrigation of trees that greatly increased its value, and would perish without it. In view of these facts, it is clear that the water right remained appurtenant to the land, that it would have passed by conveyance of the land, and, if

so, that it passed by the devise to respondent (Civ. Code, § 1311), and did not fall into the residue distributable to the appellant."

The right to the use of water for irrigation is inseparately related to land. Without its continued use upon land the right ceases. The customary practical presumption is that water rights used upon land are appurtenant to and a part of it. In this arid country, in most cases, "farm lands" are valueless without water. It is inconceivable that the testator in this case intended to devise "eleven acres above mentioned of my farm land" and not include the water rights, upon the use of which depends the enjoyment and value of the property, and without which it would scarcely be "farm land."

Upon principle and authority we conclude that the water right referred to passed by the will as an appurtenance to the land selected by the executor, and that the same should be distributed to the appellants with the land.

The judgment appealed from is reversed and set aside, and the district court directed to enter a decree in accordance with this decision awarding and distributing the whole of tract A of the real estate, as described, together with the 44 shares of capital stock of the Union & Jordan Irrigation Company, representing the water right, to appellants. The decree should also include as an appurtenance to the land devised the right of way reserved across tract B to provide the necessary access from the public highway. With respect to the division of the property devised between appellants, the court will make such disposition in accordance with the will as the circumstances may require.

Costs of this appeal to be paid out of the estate.

WEBER, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.