MANDELL et al. v. SAN DIEGO LAND & TOWN CO. OF MAINE   (SHARP, Intervener).

(Circuit Court, S. D. California.   August 22, 1898.)

WATER RIGHTS—IRRIGATION COMPANIES—RIGHTS OF CONSUMERS.
  A corporation which appropriates water under the laws of the state, and furnishes the same to consumers for domestic and irrigation purposes, cannot, by a private contract with a consumer owning land within its distributing system, limit the time during which it is required to furnish him water so that, at the expiration of such time, it may withdraw the water from his land which has been improved by its use, and sell it to a new consumer. though, by reason of more favorable location, a larger area may thereby be brought into cultivation.

In the Matter of the Petition in Intervention of James M. Sharp.

Henry J. Stevens, for complainant.
Works & Works, for defendant,
A. Haines, for intervener.

ROSS, Circuit Judge.   The question in this matter is between the intervener and the San Diego Land & Town Company of Maine, a corporation of the state of Maine, successor in interest to the San Diego Land & Town Company of Kansas, a Kansas corporation, which latter company, pursuant to the laws of the state of California, entered this state, and acquired, under and by virtue of its constitution and laws, waters and water rights for sale and distribution, and in pursuance of that purpose constructed a large and costly reservoir, and an extensive distributing system of pipes, for the purpose of supplying with water for irrigation and domestic use the inhabitants of National City, in the county of San Diego, and a large adjacent territory outside of that city, but within the county, much of which territory was the property of the company, which it designed to subdivide and sell. It did subdivide and sell a considerable portion of its lands, and furnished purchasers thereof with water for irrigation and domestic use, through and by means of its pipe system; and it also furnished water for similar purposes to the owners and occupants of neighboring lands not owned or sold by the company.   The intervener, Sharp, owned 15 acres of land situated below, and within about 1,400 feet of, one of the company's mains; and on the 26th day of March, 1892, he and the company entered into a written contract by which, in consideration of the payments and agreements therein set forth, the company agreed to furnish him, subject, where not inconsistent with the provisions of the contract, to its general rules and regulations, water for the irrigation of his tract of land, for the term of five years, or any less number of years, at Sharp's option, at the rate of $11.50 per acre annually for each and every acre or part of an acre irrigated under the contract, provided that at least 7½ acres should be paid for at the rate

specified each and every year during the continuance of the contract, —Sharp agreeing to furnish, connect, lay, and maintain in good order, at his own cost and expense, pipes of sufficient capacity and quality to conduct such water from the nearest main of the company, at such point as the company should designate, without material leakage or loss, and at the termination of the contract either to surrender and convey the connecting pipes to the company, or to remove the connection, and properly close the company's main. The contract also contained this clause:

"And in consideration of the premises, and as a material and irrevocable part of this contract, the said party of the second part, his heirs, grantees, and assigns, hereby expressly waives and relinquishes all right and benefit under and by virtue of the provisions of section 552 of the Code of Civil Procedure of the state of California; and also hereby expressly agrees, as a contract and covenant running against said above-described real estate, that all duty, liability, and obligation of the party of the first part to furnish water for said above mentioned and described tract of land, or any part or parcel thereof, shall be governed and determined entirely by this contract; and that, at the expiration thereof, that all right, claim, and demand against the party of the first part, its successors or assigns, shall terminate and cease as absolutely as if this contract had never been executed, and said party of the first part had never furnished water for use upon said tract of land."

On the hearing of this matter, the general manager of the land and town company, who entered into the contract on its behalf with Sharp, was asked by the counsel for the present company to state the reason "for making this special contract with Mr. Sharp for a limited length of time." His answer was: "Our reason for it was that we believed we had more water at that time than we had use for in other directions, and that by making a limited time contract we would be able to increase our revenue until such time as we might require the water at some other points."

At the time of the making of this contract, the regular rate at which the company was furnishing water to consumers for irrigation was $3.50 an acre per annum; and it appears in evidence that the additional $8 per acre per annum charged Sharp was intended as interest at 8 per cent. per annum on a valuation of $100 an acre for a supposed "water right."

In the case of Lanning v. Osborne, 76 Fed. 319, this court had occasion to consider the respective rights and obligations of the company and its consumers of water. It was there held, among other things, that water appropriated under and pursuant to the constitution and laws of the state of California, for sale, rental, or distribution, is charged with a public use, and that, where a corporation appropriates and furnishes water for such purposes, the rates must be established in pursuance of law, and that no attempt to fix them by private contract with consumers is of any validity; that no such corporation, company, or person has the right to exact any sum of money or other thing, in addition to the legally established rates, as a condition upon which it will furnish to consumers water so appropriated; and that, so long as a sufficient supply exists, every person within the flow of the system has the legal right to the use of a reasonable amount of the water, in a reasonable manner, upon paying the legal rate fixed for supplying it. In that case the court further held that a consumer

who settles upon and improves land by means of water appropriated and distributed under and by virtue of the constitution and laws of the state, giving to the first in time the first in right, can maintain a suit against the distributer of such water to prevent the spreading of it beyond the capacity of the system, so as to endanger the supply of those whose rights are already vested, and upon the faith of which they have invested their money and made their improvements. It is not necessary to repeat the reasons given for those conclusions. They will be found fully stated in the opinion in the case cited.

Applying the doctrine of that case, which I am satisfied is entirely sound, to the present matter, it is clear, I think, that the purported contract of March 26, 1892, between the company and Sharp is a nullity. The evidence, in my opinion, does not sustain the contention of counsel for the company that Sharp's land is without the territory covered by the company's distributing system. Confessedly, lands almost immediately adjoining the land of Sharp, and, like his, outside of National ranch, are, and have been for years, supplied with water for irrigation by the company through the same main with which it has supplied Sharp, and those lands have been, and now are, being so supplied at the company's regularly established rates. Sharp is, in my opinion, entitled to stand upon precisely the same footing. It may be, as is contended, that the supplying of these consumers will prevent the company, in the future, from supplying water to some other lands; but, in cases like the present, the first in time is the first in right. A consumer whose land is situated within the flow of such a distributing system as that of this company, and who has, by means of water thereby supplied to him, made valuable improvements on his land, cannot be thereafter lawfully deprived of such water in order that the distributer may supply later comers, even though a larger area, by reason of more favorable conditions, may thus be brought under cultivation. Such a rule would manifestly work destruction to the just and well-established rule that in cases like this the first in time is the first in right. It results from these views that the intervener is entitled to the relief prayed.