[No. 2104]

PALMIRA PROSOLE AND LUIGI PROSOLE, RESPONDENTS, v. STEAMBOAT CANAL COMPANY (A CORPORATION), APPELLANT.

[140 Pac. 720 and 144 Pac. 744]

1. WATERS AND WATERCOURSES — APPROPRIATION FOR IRRIGATION — STATUTORY PROVISIONS—APPLICABILITY.

Stats. 1913, c. 140, making water for beneficial purposes appurtenant to the place of use, unless it becomes impracticable to beneficially use water at the place, in which case the right may be severed and transferred, and become appurtenant to another place, does not affect the rights acquired by one obtaining, for several years prior to the act, water for irrigation from a water company engaged in selling water for irrigation.

2. WATERS AND WATERCOURSES—WATER COMPANIES—OBLIGATIONS.

A company owning and operating an artificial waterway and diverting water from a natural stream solely for gain by the sale of water to others, who actually apply it for irrigation, acquires no right to the water except the right to dispose of it for a reasonable compensation, and when water is once disposed of to a landowner applying the water for irrigation the control of the company over the water terminates.

3. WATERS AND WATERCOURSES—WATER RIGHTS—APPROPRIATION.

There is no absolute property in the waters of a natural stream, and the only right one may acquire thereto is by diverting the waters for a usufructuary purpose, and a water right, to be available, must be attached to the land and become in a sense appurtenant thereto by actual application.

4. WATERS AND WATERCOURSES—APPROPRIATION OF WATER—RIGHTS ACQUIRED—"APPROPRIATOR."

One who obtains water for irrigation from a water company, diverting water from a stream into an artificial waterway for sale, is an appropriator of water within the rule that a prior appropriation is a prior right, and the company is but his agent, and the right of user is equivalent to an easement in the artificial way of the company to the extent of the amount of water delivered by the company, which right is contingent only on the acts of the actual appropriator in paying a reasonable compensation for the water obtained.

5. WATERS AND WATERCOURSES—APPROPRIATION OF WATER—RIGHTS ACQUIRED.

The right of an actual appropriator of water for beneficial use, whether he obtains the water by diverting it from a natural watercourse or by purchase from a water company, is a part of the freehold.

6. WATERS AND WATERCOURSES—APPROPRIATION OF WATER—RIGHTS ACQUIRED.

Where a consumer of water for irrigation obtained the water from a company engaged in the business of diverting water from a natural stream and delivering the same to lands by means of a canal for a valuable consideration, and the company delivered to the consumer annually for several years a specified quantity of water, all used to irrigate the land of the consumer, who improved his property on the faith that the company would continue to deliver water, he obtained an implied contract to obtain water from the company for a reasonable compensation.

ON PETITION FOR REHEARING

7. WATERS AND WATERCOURSES—RIGHTS OF DITCH OWNER AND USER —ISSUES.

Whether or not the appellant, as owner of the canal, has a property interest in the right to furnish water, is not an issue in the case at bar, and observations made in the opinion are not to be considered decisive of this question.

APPEAL from the Second Judicial District Court, Washoe County; *Cole L. Harwood,* Judge.

Action by Palmira Prosole and another against the Steamboat Canal Company. From a judgment for plaintiffs, defendant appeals. **Affirmed.**

*Summerfield & Richards,* for Appellant.

*Mack, Green & Heer,* for Respondents.

By the Court, McCarran, J.:

The appellant company, being the owner of the Steamboat Canal, has for many years been engaged in the business of diverting water from the Truckee River and delivering the same to and upon the lands under that canal for a valuable consideration. It is admitted that for many years last past and until the year 1909 the defendant by means of its canal conveyed to and upon the lands of the respondents, and delivered to the respondents, fifty inches of water for a valuable consideration, to wit, the sum of $6 per annum for each inch of water so conveyed and delivered. It is admitted that in the year 1910 the appellant company refused to deliver to the respondents the usual fifty inches of water, notwithstanding the fact that respondents offered to pay the customary charge for said water. The appellant company in that year delivered to the respondents a much smaller quantity of water and one which was alleged and found by the lower court to be insufficient for irrigation of the lands of the respondents. The case was ,commenced in the lower court and judgment in that court rendered upon the theory that an annual purchaser of water at a stipulated price, from a corporation engaged solely in the business of diverting water from a natural stream and conveying the same through its own canal and at its own cost, to purchasers thereof, the latter, taking the same from the canal where it is discharged, acquires a prior right to purchase and compel the delivery of such water as he has been accustomed to receive, as against any other purchaser of water flowing in such canal whose initial purchase thereof commenced at a later date than did that of such claimant. The trial court held this to be true as a principle of law and issued an injunction against the appellant company in favor of respondents restraining the appellant from failing to permit fifty inches of water to flow through and from the Steamboat Canal upon the lands of plaintiffs so long as there shall be diverted from the Truckee River and

flowing in such canal sufficient water to supply the
plaintiffs the said fifty inches of water, and also to supply
those who are older in point of time than the plaintiffs
as consumers of water from said canal the amount they
customarily received therefrom, and also from diverting
or permitting the diversion of other waters from said
canal so that the said fifty inches of water shall not flow
to and upon the lands of plaintiffs so long as plaintiffs
will comply with a reasonable regulation of the defendant
with regard to said Steamboat Canal and shall pay the
defendant any reasonable charge made by it for the
transmission and delivery of said fifty inches of water.
The appeal in this case is from the judgment only, on the
judgment roll alone, and incidentally the question as to
whether or not the complaint states facts sufficient to
constitute a cause of action is raised.

In reviewing this case we are confronted with some-
what different conditions from those under which and
in the light of which other courts have in recent years
passed upon this all-important subject.   There is noth-
ing in the constitution of Nevada applicable to this sub-
ject from which we may derive any light whatever.   In
the year 1907 (Stats. 1907, c. 18) our legislature passed
an act to provide for the appropriation and distribution
and use of the water by which it is declared that all
natural watercourses and natural lakes and the waters
thereof, which are not held in private ownership, belong
to the state and are subject to appropriation for benefi-
cial uses.   Section 2 of the act is as follows:   "All
existing rights to the use of water, whether acquired by
appropriation, or otherwise, shall be respected and pre-
served, and nothing in this act shall be construed as
enlarging, abridging, or restricting such rights."   Sec-
tion 3 prescribes:   "There is no absolute property in the
waters of a natural watercourse or natural lake.   No
right can be acquired to such waters, except an usufruc-
tuary right—the right to use it, or to dispose of its use
for a beneficial purpose.   When the necessity for the

use of water does not exist, the right to divert it ceases, and no person shall be permitted to divert or use the the waters of a natural watercourse or lake, except at such times as the water is required for a beneficial purpose." (Revised Laws of Nevada, secs. 4673, 4674.)

The legislature of Nevada in the year 1913 passed an act to provide a water law for the State of Nevada, and section 4 of this act provides: "All water used in this state for beneficial purposes shall remain appurtenant to the place of use; *provided,* that if for any reason it should at any time become impracticable to beneficially or economically use water at the place to which it is appurtenant, said right may be severed from such place of use and simultaneously transferred and become appurtenant to other place or places of use, in the manner provided in this act, and not otherwise, without losing priority of right heretofore established; *and provided,* that the provisions of this section shall not apply in cases of ditch or canal companies which have appropriated water for diversion and transmission to the lands of private persons at an annual charge." (Stats. 1913, p. 192.)

[1] It is our judgment that whatever rights were acquired by respondents in this case, they were not affected by the act of 1913, inasmuch as it is admitted that the respondents received from appellant the amount of water claimed and applied the same to beneficial use at all times between the years 1890 and 1909, or thereabouts. Hence, if the respondents had acquired any rights by the application of this water to a beneficial use, the acquisition of that right was prior to the year 1913, and we are not inclined to view the latter act as being retrospective in so far as cases of this character are concerned. Moreover, in our judgment, it is unnecessary to either construe the act of 1913 as applicable to the facts in this case or to apply that act to the facts here presented.

In determining the case at hand no principal proposition is to be determined, *i. e.,* under the facts as presented

here, what constitutes appropriation of public waters, and who is the actual appropriator as between the ditch company, by and through whose canal and instrumentalities the public waters are in the first instance diverted, and the owner and reclaimer of lands upon which and over which the waters thus diverted from the public stream are conveyed?

A secondary proposition presents itself and which in a sense is concurrent in importance to the first or major proposition, *i. e.,* does a perpetual right to the use of water from an irrigating canal, acquired or reserved under contract either expressed or implied, constitute a right in the nature of an easement in the canal which the owner of the canal has no power to cut off so long as the party in whose favor the easement has accrued meets the reasonable demands of the canal owner in the way of charges or recompense for services in the delivery of the water by and through the means of his canal?

[2] This court formerly decided, and the several legislative acts have declared, that there is no absolute property in the waters of any natural watercourse or natural lake in the state. A canal company, which owns and operates an artificial waterway and diverts water from a natural stream solely for the purpose of gain through the sale and distribution of that water to others who, after receiving the water, actually apply it to the soil for the reclamation and irrigation thereof, can acquire no right to such waters, excepting the right to dispose of its use, and for this latter right they are entitled to reasonable monetary benefit. When water is once disposed of by the original diverting agent—the canal company—to one who, being the owner of irrigable lands, applies the same to those lands, the power of control of the agent ceases, because his only power of control at all was based upon the obligation imposed upon him by law to dispose of the water to those who would actually apply it to the land. The right of a company of this character to divert public waters carries with it a corresponding duty, *i. e.,* to dis-

pose of its use for beneficial purposes. The one cannot exist without the performance of the other. In other words, there is no right created by the mere diversion of water from a public watercourse. This act of itself carries with it no right; but, when the act of diversion is coupled with the act of application to beneficial purpose, the appropriation is accomplished.

[3] Early legislation in this state formulated little, if any, law applicable to the subject at hand. It was not until 1903 that an attempt was made to formulate a law applicable to the requirement and appropriation of the public waters of the state. The act of 1903 (Stats. 1903, c. 4) was superseded by the act of 1905 (Stats. 1905, c. 46), and that act in turn gave place to the act of 1907 (Stats. 1907, c. 18), and the act of 1907 was repealed by the act of 1913 (Stats. 1913, c. 140). It is unnecessary in this case for us to take up even incidentally the several acts referred to. Suffice it to say that the act of 1907 was in force at the time at which it is alleged in this case the appellant company failed to deliver the water to respondent. The doctrine that a prior appropriation constitutes a prior right has long since been adhered to in the jurisdictions embraced within the arid and semi-arid region of this country, and has been formulated and announced by this court in former decisions. It cannot be questioned that this doctrine is strictly applicable to the right acquired by one who, being the owner of irrigable lands, directly diverts water from a public stream by means of his own instrumentalities or his own ditch. In the case at hand we are confronted with the question as to whether or not this rule shall be made applicable to those who obtain water from a canal or waterway constructed by another for the purpose of diverting water from a public stream for sale and distribution.

In determining this question it must be constantly kept in mind that absolute property in the waters of a natural stream does not exist; that the only right that one can acquire to such water and the only right by reason of which one can divert such waters from their

natural watercourses is for a usufructuary purpose and in cases of this character—the purpose of applying the water thus diverted to irrigable lands. In other words, a water right for agricultural purposes, to be available and effective, must be attached to the land and become in a sense appurtenant thereto by actual application.

[4] In this case the appellant company makes no claim based on its ownership or possession of the lands under its canal, and, so far as we are advised by the pleadings, it is not now, nor was it at the time of its construction, the owner of the lands which it sought to cover by the construction of its canal. We deem it fair to assume, therefore, that the sole aim and object and purpose of the construction of the canal and the aim and object and purpose of its operation and maintenance until the present time is for the purpose of disposing of the water which it diverts from the public stream to those who own or possess the lands lying under the ditch. The act of diversion on the part of the appellant company could not, as we have reasoned it, constitute a complete and valid appropriation. It required more than the mere diversion of the water to complete the appropriation under the doctrine as heretofore referred to. Hence the diversion of the water from the canal of the appellant company and its application to a beneficial use by the owners or possessors of irrigable lands constituted the culminating act in perfecting the appropriation. This latter step, namely, the application of the water itself to the lands for the purpose of reclamation and irrigation, fulfilled the primal and essential object to all legislation and judicial expression upon this subject, i. e., the cultivation of the soil.

The history of the arid west is replete with legislation and judicial expression upon the subject of irrigation. Much of the modern law applicable to this subject has grown out of the conditions found prevalent in this region, and the paramount thought, both in the legislative acts of the several states and in the judicial expressions coming from the several jurisdictions, is the actual

economic application of the exceedingly scarce, but all-important element, water to the soil, with the end in view that the latter may perform its highest function in producing sustenance for humanity. Hence it follows, as it has been reasoned out by many courts of last resort in able and well-considered opinions, that he who applies the water to the soil, for a beneficial purpose, is in fact the actual appropriator, although the application may be made through the agency of another, who by and through his own means and instrumentalities diverts the water, in the first instance, from its natural course.

As was well stated by the Supreme Court of Arizona in the case of *Slosser* v. *Salt River Valley Canal Company*, speaking through Mr. Justice Sloan: "The appropriator may thus, immediately, by constructing and owning his own ditch or canal, or, mediately, by acquiring the permanent right to the service of another's ditch or canal, whether the latter be owned by a natural or artificial person, perfect his appropriation. A corporation thus organized for the purpose of furnishing water for agricultural purposes, to be used by others in privity of contract with it, becomes the mere agent of the latter, and, under the statute, may divert from a public stream water which the latter may acquire and use for purposes of irrigation. The measure of its right so to do is the needs and requirements of those owners or possessors of arable and irrigable lands with whom, by contract, it stands in relation as agent. The doctrine of agency, therefore, unless we concede to such corporations a right not enjoyed by other inhabitants under the statute, must be invoked, in order to confer upon them any right to the diversion of water from a public stream." (*Slosser* v. *Salt River Co.*, 7 Ariz. 376, 65 Pac. 336.)

It being our judgment that the rule as asserted in the case of *Slosser* v. *Salt River Co.*, *supra*, is applicable in this case, it follows that the appellant company can be regarded in no other light than that of the agent for those who, having in years past taken the water from

the canal of appellant, have applied the same to beneficial use, and who have thus acquired a right of user equivalent to an easement in the canal of appellant to the extent of the amount of water delivered to them by appellant. This right is contingent only upon the acts of the actual appropriator in meeting the reasonable demands of the conveyor for services performed by way of delivery of the water to the point of diversion from the latter's canal. (*People, ex rel. Standard,* v. *Canal Co.,* 25 Colo. 213, 54 Pac. 626; 2 Wiel on Water Rights, sec. 1340.)

The Supreme Court of Colorado, in the case of *Wright* v. *Irrigation Co.,* 27 Colo. 313, 61 Pac. 603, held in substance that a contract existing between the company, as the conveyor of the water from the natural stream, and the actual appropriator, is not for the purchase of the given volume of water, but rather the acquirement of the right to use the canal of the conveyor as a means of conducting a given volume, or so much thereof as may be necessary to irrigate a certain number of acres.

The Supreme Court of Idaho, in passing upon this subject in the case of *Farmers' Cooperative Co.* v. *Riverside Irr.,* 14 Idaho, 450, 94 Pac. 761, adhered to a different rule from that announced by the Supreme Court of Arizona and the Supreme Court of Colorado, wherein the Supreme Court of Idaho said: "The appropriation of waters carried in the ditch operated for sale, rental, and distribution of waters does not belong to the water users, but rather to the ditch company. The right to the use of such water, after having 'once been sold, rented, or distributed to any person who has settled upon or improved land for agricultural purposes,' becomes a perpetual right, subject to defeat only by failure to pay annual water rents and comply with the lawful requirements as to the conditions of the use."

It must be observed in this respect, however, that the Supreme Court of Idaho in formulating this rule did so under express provisions of its constitution.

[5] That the right of an actual appropriator or user

of water once acquired from the original converter is an easement has been subjected to some considerable criticism by those who have given thought to this subject, and it has been said that to term this right an easement it must be such as would pass as an appurtenance without further description in a conveyance of the realty on which or to which the actual right of user had been exercised. But, applying the doctrine of appropriation as hereinbefore referred to, and, answering this criticism in the light of practical and material observations, it is at once apparent that the very criticism itself is an answer to the proposition on which the criticism is based, because the very right itself, relating as it does to the land upon which it is applied, although in a sense incorporeal, nevertheless, by reason of its application, becomes an integral part of the freehold. The water and the land to which it is applied become so interrelated and dependent on each other in order to constitute a valid appropriation that the former becomes, by reason of necessity, appurtenant to the latter. The right of a direct appropriator to use the waters of a public stream and to apply the same to beneficial use has been termed an "incorporeal hereditament," and it has been said that a consumer under a ditch, constructed and maintained for the sole purpose of distribution and sale, possesses a like property. (Weil on Water Rights, 3d ed. 1240, and authorities there cited.)

[6] It is the contention of appellant in this case that, inasmuch as plaintiffs allege only an annual delivery of fifty inches of water prior to 1910 and the failure and refusal to furnish such an amount of water to respondents in that year, no continuing contract is established thereby between respondents and appellant. This contention is, in our judgment, not well founded. As disclosed by the record, respondent went upon the land in question and reclaimed the same, and by and through the continuous use of the water diverted from appellant's canal cultivated and improved the land and caused the

land to produce crops. The appellant company having once furnished the water to respondent, and having by the initial delivery of water and by the continuous delivery thereof for a successive number of years held out to respondent that he could improve the land in question in reliance upon such water, it would be unreasonable to say that the appellant could now deprive respondents of the use of the water so long as the amount of the water diverted by the respondent was economically essential to the cultivation of the land. Having delivered the water and having observed the acts of respondents in applying the water and improving the land and exerting their energies toward the creating and upbuilding of property based upon a faith and a justifiable expectation that the company would continue to deliver the water, the appellant, in our judgment, cannot now be heard to deny the existence of an implied contractual relation between itself and respondents.

Following out the reasoning that he who actually applies the water to the soil is the appropriator, even where he obtains the water from the canal of one who has diverted it for distribution, the law of appropriation must apply to determine his right as against other users from the same canal or system. Hence, the rule that a prior appropriation constitutes a prior right applies to the appropriators of water, where the appropriation is made by and through the agency of another, as well as where the appropriation is made directly from the public stream. The respondents in this case were entitled to the amount of water formerly diverted and used by them so long as the delivery of that water to them did not interfere with those whose rights of appropriation under the same system were prior in point of time. (*Lanning* v. *Orborne,* 76 Fed. 319; *Mandell* v. *San Diego Co.,* 89 Fed. 295.)

As was said by Judge Ross in the case of *Mandell* v. *San Diego Co., supra:* "A consumer whose land is situated within the flow of such a distributing system, * * *

and who has, by means of water thereby supplied to him, made valuable improvements on his land, cannot thereafter be lawfully deprived of such water in order that the distributor may supply later comers, even though a larger area, by reason of more favorable conditions, may thus be brought under cultivation. Such a rule would manifestly work destruction to the just and well-established rule that in cases like this the first in time is the first in right."

It is the duty of the diverting corporation in cases of this kind, where a consumer has once established a right the use of water by acquiring the same and applying it to a beneficial purpose, to continue to furnish him water in preference to latter applicants, provided he has never waived his rights nor forfeited the same. The company has the right, and it is its duty, to discriminate between appropriators of water from their irrigation system, giving the preference to those appropriators who are oldest in point of time. In cases of this character the company is but a diverter inasmuch as its only purpose and power is to divert the water from the natural waterway. The consumer is the converter inasmuch as it is he who converts the water to the land covered by the canal, and, having once applied the water to the land for beneficial purposes, he should not be deprived of the use or benefit of such water in favor of later applicants, so long as he complies with the reasonable requirements of the diverting company. (3 Kinney, Irr. & Water Rights, sec. 1500.)

The question as to the amount of damages assessed by the jury in the trial court in this case is not before us.

The judgment should be affirmed.

It is so ordered.

### ON PETITION FOR REHEARING

By the Court, McCARRAN, J.:

Since we rendered the decision in this case, the Supreme Court of the United States has rendered the decision in the case of *San Joaquin and Kings River Canal and*

*Irrigation Company* v. *County of Stanislaus*, 233 U. S. 454, 34 Sup. Ct. 652, 58 L. Ed. 1041, and in appellant's petition for rehearing reference is made to this decision.   One observation made by the Supreme Court of the United States in that case is especially pertinent to the principal issue in the case at bar, inasmuch as it supports our position taken therein.   The court said: "No doubt it is true that such an appropriation and use of the water entitles those within reach of it to demand the use of a reasonable share on payment."

In the San Joaquin-Stanislaus case, *supra*, the court, speaking through Mr. Justice Holmes, makes some very pertinent observations relative to the property rights to be recognized in favor of the party furnishing the water, where the sole object for the diversion is that of sale and distribution.   As to whether or not the appellant had a property interest in the right to furnish the water is not an issue in the case at bar, and our observations made in the opinion are not to be considered as decisive of this matter.

Application for rehearing in the above-entitled cause is hereby denied.