[No. 2258]

## L. PINCOLINI, A. PINCOLINI, E. PINCOLINI, AND D. PINCOLINI, RESPONDENTS, *v.* STEAMBOAT CANAL COMPANY (A CORPORATION), APPELLANT.

[167 Pac. 314]

1. WATER AND WATERCOURSES—IRRIGATION—ACTION FOR DAMAGES.

In a suit for partial loss of growing crops alleged to have been occasioned by defendant's refusal to deliver to plaintiffs the amount of water for irrigation which they claimed, and to establish their rights, evidence *held* not to establish plaintiffs' contentions as to the amount of water claimed, and to necessitate a reversal of judgment in their favor which awarded damages and provided for an injunction.

APPEAL from Second Judicial District Court, Washoe County; *R. C. Stoddard,* Judge.

Action by L. Pincolini, and others, against the Steamboat Canal Company, a corporation. There was a judgment for plaintiff, and a motion for a new trial being denied, defendant appeals. **Reversed.** Rehearing denied.

*Summerfield & Richards,* for Appellant:

There is no evidence warranting the court in finding that plaintiffs ever were entitled to, had used upon or demanded of plaintiff, or that there was ever appurtenant to plaintiffs' land, 145 inches of water from Steamboat Canal for the irrigation of the land in question, or for any other purpose whatsoever. The judgment and order denying the motion for a new trial should be reversed. The evidence is insufficient to justify the verdict, findings or decision and judgment, and the verdict, findings or decision and judgment are against law.

The alleged conversations between plaintiffs and the representative of the defendant company must be regarded as speculative and depending on future contingencies, and make it plain that the findings of the lower court in relation to the 145 inches of water are predicated upon uncertain testimony and the mere expectations of the plaintiffs.   Before a right can be initiated upon the conduct of a party induced or being induced by mere statements on account of which it is sought to charge or obligate another party, as in this case, the evidence must be clear, not open to question or doubt, convincing and satisfactory; and such statements, if made at all, and the surrounding circumstances cannot be construed or analyzed with the clearness and certainty of a definite understanding for additional water.   The expectations alleged and sought to be construed as a contract are speculative, and such that no prudent man would make under the circumstances of the testimony in the record on appeal.

The settled rules of evidence will not be gainsaid or disturbed by testimony so indefinite, uncertain, unsatisfactory, and purely speculative.   The authorities are numerous and uniform supporting the proposition of law herein announced.   The rule is well stated in the case of *Davis* v. *Davis*, 26 Cal. 23, as follows:

"We may say in respect to parol evidence of the declarations and admissions of persons made long anterior to the trial, upon which an estoppel *in pais* may be sought to be founded, that it cannot be too carefully scrutinized by courts and juries.   In all cases it is the most dangerous species of evidence that can be admitted in a court of justice, and most liable to abuse.   In most cases it is impossible, however honest the witness may be, for him to give the exact words in which the declaration or admission was made.   Sometimes even the transposition of the words of a party may give a meaning entirely different from that which was intended to be conveyed.   The slightest mistake or failure of recollection may totally alter the effect of the declaration or

admission.   And more than this, it is most unsatisfactory evidence, on account of the facility with which it may be fabricated, and the impossibility, generally, of contradicting it when false."

This rule is supported by *Law* v. *Merrille*, 6 Wend. 277; *Jackson* v. *Sherman*, 6 John. 21; *Lench* v. *Lench*, 10 Ves. Jr. 517; *Cleavland* v. *Burton*, 11 Vt. 139; *Snelling* v. *Utterbach*, 1 Bidd. 611; *Morris* v. *Morris*, 2 Bidd. 311; *Bernard* v. *Flournoy*, 4 J. J. Marsh. 102; *Ferry* v. *Gerbeau*, 5 Mart. N. S. 19.

*Mack & Green* and *A. A. Heer*, for Respondents:

None of the assignments of error discussed by appellant in its brief constitutes any ground for the reversal of the judgment.   Primarily this is a direct action for damages for injury to growing crops.   As such, it is an action at law, and the fact that an injunction against the continuance of the wrong complained of was prayed for and granted, does not change the nature of the action.   A portion of the remedies sought is equitable in its nature, but the action does not for that reason become one in equity.   It is not, therefore, an action in which the verdict of the jury was advisory, and in which findings were required by the court.   Every issue of fact was submitted to the jury, and the presumption of law is that every material issue was passed upon by the jury and determined in harmony with the verdict.   The verdict alone is all that is necessary to sustain the judgment, and any finding of fact by the court, beyond the adoption of the verdict, was entirely superfluous.   (8 Stand. Proc. 999; *Morrison* v. *Stone*, 103 Cal. 94; *Reiner* v. *Acroder*, 146 Cal. 411; *Hoyt* v. *Hart*, 149 Cal. 722; *Cushing-Wetmore Co.* v. *Gray*, 152 Cal. 118; *Jenkins* v. *Commercial Nat. Bank*, 113 Pac. 463; *Jones* v. *Edwards*, 152 S. W. 727.)

The question of abandonment went to the jury under instruction from the court.   The jury found against the defendant, the record showing that the question of abandonment was the main question, aside from damages, passed upon by the jury.   Therefore, the matter having

been fully dealt with, we believe the verdict of the jury ought not to be disturbed.

By the Court, COLEMAN, J.:

Defendant, being dissatisfied with the judgment of the trial court and the order denying its motion for a new trial, has appealed.

This was a suit for damages for partial loss of growing crops in the years 1909 to 1912, inclusive, alleged to have been occasioned to respondents by appellant because of its refusal to deliver to respondents the amount of water to which they alleged they were entitled with which to irrigate their lands. Damages were alleged in the sum of $5,870, and awarded in the sum of $4,500.

It is alleged in the complaint that the amount of water which plaintiffs received from the ditch of appellant each year in the complaint mentioned, except as hereinafter stated, was a flow of 145 inches. The complaint further alleges that for many years prior to the year 1909 defendant, appellant herein, had conveyed to and upon the land of respondents and their grantors, and there delivered for a valuable consideration, a flow of 145 inches of water. This case was apparently tried upon the theory that the plaintiffs had the same rights to water transported in the ditch owned by appellant, by reason of prior appropriation in themselves and their predecessors in interest, as would be the case were they appropriators direct from a natural stream. Assuming for the purposes of the case, hereinafter discussed, that this theory is applicable, the question of the time and the amount of appropriation becomes of prime importance. The respondents are the owners of a tract of land which formerly comprised two ranches, one known as the Sturges ranch and the other as the Barney ranch. It is their contention that they are entitled to receive from the appellant company 45 inches of water for the Sturges ranch and 100 inches of water for the Barney ranch.

It appears from the evidence that the ditch known as the Steamboat Canal was first constructed by a number

of farmers who desired to take water therefrom, among whom was one Ephraim Barney, the original proprietor of the Barney ranch.   The witness A. M. Lamb testified that the ditch in its original form was completed in the year 1881, and that for two years thereafter he had charge of it; that during the first year he was in charge thereof the Barney ranch took 40 inches and the next year 60 inches of water; that he did not know the amount of water thereafter taken by this ranch.   It appears that about this time litigation was instituted on account of the ditch and the ownership passed to one Hampton, and that from that time up to the present the water users were not owners of the ditch itself, but paid to the ditch owner a certain sum annually for each inch of water used.

L. Prosole, a witness for the respondents, testified that Barney was at one time using 100 inches of water from the ditch in question.   How long a time this continued does not appear.   In the year 1890 the ranch was acquired by one Nick Sorgi, who thereafter held it until the year 1904.   He testified that he took 80 inches of water for the period that he held the ranch, excepting the last year, when he took no water.   He also testified that he secured the ranch from Mrs. Barney, and that she informed him at that time that she was taking 80 inches of water. This witness further testified that he had paid $400 a year for the use of the water, at the rate of $5 per inch.   S. H. Wheeler, manager of the appellant company, testified that this was the amount of water taken by Sorgi, excepting the year that he took no water for the ranch, and the books of the company show that $400 was the amount annually paid by Sorgi for 80 inches of water.   There is also testimony to the effect that Sorgi's measuring box was fixed so as to apportion 80 inches to the ranch.

The witness A. G. Pincolini, who purchased the Barney ranch for $2,750, in the year 1904, testified that before purchasing the ranch he had heard that it was "short of water," and that he went to see S. H. Wheeler relative to the matter of water, and that "he [Wheeler] said at first the Barney ranch used to have the right to 100 inches.

And then he says when Mr. Sorgi came, he said he got 80 inches all the time. He says now it went down to about 40, I think 40, that year." The witness Sorgi testified that in the year 1903 he told Mr. Wheeler to "give the water to anybody who wanted it; I don't want any more water for that ranch," and that the following year he took no water for the ranch. Sorgi further testified that the next year he sold the ranch to Mrs. Candler, and that at the time he sold the same to her he told her, "Don't have no more water; they have to go see Mr. Sam Wheeler if he wants to get any more water or not."

The Sturges ranch first received 15 inches of water. That was about the year 1894 or 1895. It was not until the year 1905 or 1906 that the Sturges ranch was receiving a total of 45 inches of water. There is no definite finding as to when the water rights for the Sturges and Barney ranches, respectively, were initiated, but it is clear that 30 of the 45 inches claimed to belong to the Sturges ranch did not date back more than about ten years prior to the trial of the case.

1. The undisputed evidence shows that if the Barney ranch was ever entitled to more than 80 inches of water, the right to such excess was abandoned prior to the acquisition of the ranch by Sorgi, and continued so abandoned up to the time of the purchase by respondents. It is also urged by respondents that conceding that abandonment is shown, appellant is estopped from urging it. As to this contention we may say: (1) Estoppel is not pleaded; (2) that issue was not determined by the trial court; and (3) we do not think the evidence is clear and strong enough to sustain the contention.

Upon the issue of damages, the questions were propounded to the witnesses based upon the theory that plaintiffs were entitled, as a matter of right, superior to certain others receiving water from the ditch, to water in the amount of 145 inches. The witness Pincolini was asked the question: "Now, how much would you have raised if you had water amounting to 145 inches?" All of the testimony relative to the amount of damages

is based upon the theory that plaintiffs were entitled to 145 inches of water, and that the rights of plaintiffs to this water were prior in time to certain other later water users. The instructions given to the jury apparently allowed no discretion to determine the amount of water, if any, that plaintiffs were entitled to over other prior appropriators. For example, the following excerpt is taken from instruction No. 2:

"If the jury find  *  *  *  that the plaintiffs had for many years prior to the year 1909 received from said Steamboat Canal 145 inches of water for the irrigation of their said land and had applied the same to that purpose,  *  *  *  the jury will find the issues in favor of the plaintiffs."

A number of other instructions embodied this same feature. There is not in the entire record any proof whatever that this land in any one year had received from said ditch the amount of 145 inches of water. The Sturges ranch did not receive 45 inches until about the year 1905 or 1906. If 100 inches of water was ever used upon the Barney ranch, it must have been for a short time some twenty years earlier than the time when the Sturges ranch had increased the amount of its use to 45 inches. Under no theory of the case can it be said that the Barney ranch, as a matter of right, is entitled to more than 80 inches of water. While it is conceded that the Sturges ranch received 45 inches of water one year, the use of such amount is of comparatively recent date with reference to other water users. While an attempt was made to prove that the appellant company had diverted water to later water users, so as to affect the rights with reference to the Barney ranch, little, if any, attempt was made to establish the fact that these later water users were subsequent in time when compared with the Sturges ranch.

Assuming that the evidence shows that the Barney ranch is entitled to 80 inches of water and the Sturges ranch to 45 inches, the way the questions relative to damages were propounded, it is impossible for this court

to say what the amount of damages would have been unless we should resort to a matter of pure speculation or attempt to exercise the functions of the jury. There is no proof whatever that the Barney ranch ever took 100 inches of water, except that given by a witness who was a stranger to the title and who did not fix the time of use. In order to recover damages for the deprivation of water, and to obtain an injunction against further interference therewith, there must be established an appropriation prior in time to other water users, and a right to the continuous use thereof.

It is ordered that the judgment and order appealed from be reversed, and that a new trial be granted.

SANDERS, J., concurring:

I concur in the conclusions announced by my associate, but upon grounds different from those stated. Because of the opposite views expressed by counsel as to the character of this action it is made necessary to determine, in the first instance, the respondents' right under the pleadings, and what were the issues to be determined upon the trial. It is the contention of appellant that the action was in equity, and the contention of the respondents that it was an action at law for damages, and for an injunction to prevent further injuries.

This action was a mixed action, appealing to both the equity and law side of the court. The primary object and purpose of the suit was to establish and protect respondents' right to the use and enjoyment of 145 inches of water for the irrigation of their land, flowing in the Steamboat Canal, a water ditch used and operated for many years by the appellant company, and its predecessors in interest, for conveying waters appropriated from the Truckee River to lands situate under its system, and delivering the same for a valuable consideration. In addition to the equitable relief sought, the respondents, in substance, allege that their crops had been greatly damaged during the years 1909, 1910, 1911, and 1912, by reason of the appellant's failure or refusal to

deliver to respondents the specified amount of water; that the appellant threatens to and, unless restrained, will divert, and continue to divert, the water flowing in said canal to other users subsequent in right to that of respondents, to their irreparable injury and damage. They allege damages in the sum of $5,870; and pray judgment for said sum, and for an injunction.

Appellant denies the averments of the complaint, and for an affirmative defense alleges, that the land of respondents, being situate at the extreme end of the canal, approximately thirty-two miles from its source, has never been supplied with any specified amount of water, for the reason that it was impossible so to do because of the situation of the land, and that by reason of its situation it was always understood that respondents should receive such amount of water as appellant could furnish, and should pay therefor irrespective of any particular or specified amount; that such had been the entire course of dealing, and that at no time was there any understanding, contract or agreement otherwise or different.

Upon this averment the respondents joined issue, and by way of defense alleged:

"But in this behalf plaintiffs allege, that defendant promised and agreed to supply plaintiffs with 145 inches of water through its ditch."

The manner in which the case was tried is not to be commended. (*Simpson* v. *Harris*, 21 Nev. 375.) The whole case was submitted to a jury without request for special findings. Where legal and equitable issues are raised by the pleadings the latter can be tried with or without a jury (*Treadway* v. *Wilder*, 12 Nev. 108), but it is conceded to be proper in such cases to in some manner keep the issues separate. (*Low* v. *Crown Point M. Co.*, 2 Nev. 75.) The jury returned a general verdict in favor of respondents and assessed their damage at $4,500. The court made full findings of fact, and "established and sanctioned" the verdict by making it a part of its findings (*Duffy* v. *Moran*, 12 Nev. 94), and

decreed that the appellant be enjoined from diverting, or permitting to be diverted, the specified amount of water, or any part thereof, so that the same shall not flow to and upon respondents' land for the irrigation thereof.

It is the contention of the appellant that the cause being one in equity the case should be reversed for want of findings, or for the failure of the court to find upon the evidence adduced in support of its affirmative defense, be it true or false. (*Warren* v. *Quill,* 9 Nev. 259.) I am impressed that this defense was framed and directed to meet the issue of damages. It was certainly no defense to respondents' right to an injunction. If the understanding between the parties, at the time of the purchase of the Barney tract in 1904, be considered as a contract binding respondents for all time because of the situation of the land to receive such amount of water as appellant could furnish, it was without consideration. The verdict of the jury and the court's adoption thereof was a sufficient finding against the appellant upon this issue, and it was not prejudiced by the court's failure or refusal to make a special finding. Furthermore, the case was tried by a jury. (Rev. Laws, 5345.)

I concur in the view taken by my associate that the record fails to show a clear, legal right in the respondents to the use of the full quantity of 145 inches of water flowing in the canal at the periods named in the complaint, but I am satisfied that the record does show the respondents to be entitled to the flow of 125 inches of water. But being entitled to an injunction establishing a right to the use of 125 inches of water, it does not necessarily follow that they are entitled, as a matter of law, to damages for past injuries. It is obvious from the testimony of A. G. Pincolini, a witness for respondents, and from the testimony of A. Pincolini, one of the respondents, that the origin or source of their damage was attributed to the breach or nonperformance of the appellant's agreement or promise to supply

respondents with 145 inches of water, and not the breach of a duty imposed by law. The cause of action being for breach of contract, and the trial being in form tort for appellant's failure to perform a duty imposed by law, such error, though unassigned, requires reversal of the judgment. (*Galveston H. & S. A. Ry. Co.* v. *Hennigan,* 76 S. W. 452.) But I do not reverse the judgment upon this ground, for the reason that it appears from the instructions given the jury at the request of respondents, that the trial court took the view that the action was a breach of a public duty, a duty imposed by law, though involving in this breach a breach of contract also. (*Central R. & B. Co.* v. *Roberts,* 18 S. E. 315.) But it appears that the court was called upon to deal with another state of facts before it could instruct that the appellant was liable for such damages as were the natural consequence of appellant's failure or denial to deliver the water. There was much evidence adduced which clearly tended to show that respondents, by their acts and conduct, waived the duty imposed by law upon the appellant to supply the specified amount of water. This court in the case of Prosole against the appellant company (37 Nev. 154) declared that it was the duty of the diverting corporation in cases of this kind, where a consumer has established his right to the use of water, to continue the service, *provided* the consumer has never waived his rights nor forfeited the same. It is a maxim of jurisprudence "that he who consents to an act is not wronged by it," and certainly one cannot waive a tort and sue for it in the same action.

Judge Cooley says:

"Consent is generally a full and perfect shield when that is complained of as a civil injury which was consented to  *  *  *.  A man may not even complain of the adultery of his wife, which he connived at or assented to. If he concurs in the dishonor of his bed, the law will not give him redress, because he is not wronged." (Cooley on Torts, 3d ed. p. 282.)

When an action is tried as an action at law, and so treated by the courts and parties, it should at least be fairly submitted to the jury and the law correctly stated to them. This was not done, taking into consideration the evidence tending to show that the respondents by their acts and conduct waived the duty imposed by law upon the appellant to supply respondents with a specified amount of water during the periods named in the complaint.

McCARRAN, C. J.:

I have not participated in the foregoing opinion, nor in the consideration of the case as it stood before this tribunal, for the reason that the respondents here were at one time parties to a suit involving a subject somewhat related to the matter at bar and in which I appeared as attorney for the parties. This matter being brought to my attention by the learned counsel for the appellant, I deemed it proper to refrain from participation.

### ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.