1002

PACIFIC STATES SAVINGS & LOAN
CORPORATION v. SCHMITT et al.
No. 9015.
Circuit Court of Appeals, Ninth Circuit.
May 12, 1939.
Rehearing Denied July 14, 1939.

Maurice E. Harrison, T. W. Dahlquist, and James S. Moore, Jr., all of San Francisco, Cal. (Brobeck, Phleger & Harrison and Orrick, Dahlquist, Neff & Herrington, all of San Francisco, Cal., of counsel), for appellant.

Platt & Sinai, of Reno, Nev., for appellees.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The appeal is from a decree in a suit to obtain a declaration that the plaintiff Reconstruction Finance Corporation is entitled to a lien upon stock of certain water companies claimed to be appurtenant to lands subject to a mortgage assigned to plaintiff. During the pendency of the action the mortgage was foreclosed and appellant, which had succeeded to the interest of the Reconstruction Finance Corporation, was substituted as party plaintiff.

The unchallenged findings of the trial court disclose the following: In 1930, and for many prior years, John G. Taylor owned lands in the Lovelock Valley which he irrigated with waters of the Humboldt River. He was the owner of shares of stock in the Humboldt-Lovelock Irrigation, Light & Power Company, the Young Ditch Company, the Union Canal Company and the Old Channel Ditch Company. The ownership of this stock—described in the findings as water stock—vested in him the right to use, in common with other shareholders, the reservoirs, ditches and other facilities of the named companies for the storage and distribution of water for use upon his lands. These lands are arid in character, having little or no value in the absence of irrigation. For many years prior to 1930, and since that time, water for their irrigation has been obtained from two sources, one source being directly from the natural flow of the river, and the other from flood waters of the Humboldt stored in the Pitt-Taylor Reservoir. The reservoir is owned by the Humboldt-Lovelock Irrigation, Light & Power Company, hereafter to be referred to as the Reservoir

Company. The water from both sources is distributed to the lands through ditches owned by the Young Ditch Company, the Old Channel Ditch Company and the Union Canal Company, which will be referred to as the Ditch companies.

The relative rights of the appropriators of water from the Humboldt River have been formally adjudicated in the Nevada courts. In the state decree the right to use the water carried in the distribution systems of the Ditch companies was adjudged to be appurtenant to the place of use. None of the Ditch companies, so far as material here, was adjudged to have any right to divert or appropriate waters of the stream. The right of the Reservoir company to store water is evidenced by certificates issued by the State Engineer. These certificates contain a provision limiting the use of the stored waters to the supplying of any deficiency in the irrigation of listed "vested right" lands irrigated by direct diversion from the Humboldt River.

On June 9, 1930, Taylor transferred the lands mentioned, together with his personal property, to John G. Taylor, Inc., a corporation. The deed conveyed all the real and personal property of the grantor, together with all appurtenant water rights, ditches and canals, "and all shares of stock of any water corporation appurtenant to said land, or the water[s] from which are used or have been used in connection with the irrigation or cultivation thereof." The deed was duly recorded.

On March 12, 1932, John G. Taylor, Inc. gave its note in the principal sum of $700,-000 to the Reno National Bank, and as security for the indebtedness gave to the bank a real estate mortgage and a chattel mortgage, both of which were duly recorded. The real estate mortgage embraced all the lands formerly owned by Taylor, irrigated through the distribution works of the companies, together with all appurtenant water rights and the mortgagor's interest in all dams, reservoirs, ditches, canals, and other works for the storage or carrying of water. The water stock was not specifically mentioned. Prior to the 5th of May, 1932 the Reno National Bank hypothecated the note and mortgage with the Reconstruction Finance Corporation as collateral security for a very large loan.

Thereafter Taylor pledged, with other collateral, the water stock heretofore described to the Bank of Nevada Savings & Trust Company [1] as security for advances subsequently made to John G. Taylor, Inc., in the amount of $32,500, on promissory notes executed by John G. Taylor, Inc., and endorsed by Taylor individually. Later on the Bank of Nevada Savings & Trust Company became insolvent and appellee Leo F. Schmitt was appointed receiver. The certificates representing the pledged stock came into the hands of appellee as such receiver.

During the pendency of the instant suit the mortgages given by John G. Taylor, Inc., to the Reno National Bank and hypothecated by the latter to the Reconstruction Finance Corporation were foreclosed. Pursuant to foreclosure sale all property of every description subject to the mortgages was conveyed at the instance of the Reconstruction Finance Corporation to the receiver of the Reno National Bank, and thereafter transferred to appellant.

The court concluded as a matter of law that appellant is the owner of the mortgaged lands and of all the water rights appurtenant thereto or used for the irrigation thereof, and of rights to all means of transportation and storage of such appurtenant water rights; but that, subject to such rights, appellee receiver is entitled to a lien on the shares of stock pledged to the Bank of Nevada Savings & Trust Company. Further, that appellant is not entitled to a judgment declaring such water stock to be subject to the lien of the real estate mortgage. Final decree was entered in conformity with these conclusions.

The trial judge appears to have believed that the stock in question might represent something of value other than an interest in the irrigation systems. In his memorandum opinion he calls attention to the circumstance that the articles of incorporation of the several companies do not disclose that they were organized for the sole or primary purpose of supplying water for the irrigation of any particular land. "In the case," said the court, "of the Humboldt-Lovelock Irrigation, Light & Power Company, as indicated by its name, it was incorporated for other purposes in addition to that of storing and transporting water. Stock therein might necessarily

[1]This Bank was operated in conjunction with the Reno National Bank, and the two institutions had common officers and directors. It is conceded that the pledgee Bank had actual knowledge of the prior mortgages to the Reno National.

have a value for reasons wholly distinct from the matter of supplying water for irrigation of lands."

We think neither the findings nor the evidence support this view. All of the companies have been in existence for a great many years.[2] None has ever been operated for profit. As for the Ditch companies; their sole functions have been limited to the maintenance and operation of their ditches. These, together with diversion dams, constitute their only assets. Their revenue is derived solely from assessments levied on their shareholders. Likewise, the sole functions of the Reservoir company have always been limited to the storing and diversion of water for the exclusive benefit of lands owned by its stockholders and to the maintenance and operation of the reservoir for the purpose of storing and diverting water for the benefit of such lands. The reservoir and diversion works constitute its sole tangible asset. It has not at any time manufactured, sold, or distributed light or power, or engaged in any business or activity other than the business of acting as the agent of its stockholders in the diversion and storage of water to be applied to beneficial use upon their lands. It has never been operated for profit, and its sole source of revenue has always consisted of an annual charge collected from its stockholders on the basis of the quantity of water delivered to them, and assessments levied upon its shareholders to make up any deficiency in the annual charge.[3] Such were the express findings. The record further discloses that the stock in all these companies has been transferred only as an incident to the transfer of lands. In a few instances pledges have been made in connection with real estate mortgages executed by stockholders.

■■ If we disregard nomenclature and the formal recital of powers possessed but never asserted or exercised, there is noth-

ing in the history or situation of any of these corporations to differentiate them from the mutual non-profit irrigation companies so familiar in the arid states. In substance; the shares are mere muniments of title to rights in available water and to proportionate interests in the irrigation systems operated by the corporations as agents of their shareholders. Prosole v. Steamboat Canal Co., 37 Nev. 154, 140 P. 720, 144 P. 744. Compare In Re Thomas' Estate, 147 Cal. 236, 81 P. 539.

■■ It is a generally accepted principle in the arid states that shares in a non-profit irrigation company are appurtenant to the land of the shareholder irrigated through the system. They pass upon conveyance of the land and appurtenant water rights, although the stock may not be mentioned or the certificates formally transferred. In Re Thomas' Estate, supra; Ireton v. Idaho Irrigation Co., 30 Idaho 310, 164 P. 687; In Re Johnson's Estate, 64 Utah 114, 228 P. 748; Yellowstone Valley Co. v. Associated Mortgage Investors, 88 Mont. 73, 290 P. 255, 70 A.L.R. 1002; Burnett v. Taylor, 36 Wyo. 12, 252 P. 790; Twin Falls Land & Water Co. v. Twin Falls Canal Co., D.C., 7 F.Supp. 238, affirmed, 9 Cir., 79 F.2d 431.[4] The intimate legal relationship between land and water beneficially applied upon it, whether the water is directly appropriated or obtained through the intermediary of a canal company, finds ample recognition in Prosole v. Steamboat Canal Co., supra. We are satisfied that stock in irrigation companies should be held to have in Nevada the status usually accorded such property in other jurisdictions faced with similar problems.

■ For certain purposes, it is true, shares of this character are personal property, and their independent transfer may operate as a severance of the appurtenant water or ditch rights which they evidence.[5] Here, however, Taylor had made no prior trans-

---

[2] The Humboldt-Lovelock Irrigation, Light & Power Company was incorporated in 1909, the Ditch companies apparently prior to that time.

[3] The articles and certificates of the Reservoir company make provision for two classes of stock. Each holder of Class A stock (the shares in question are of this class) is entitled to receive a proportionate share of the first 10,000 acre feet of stored water, and Class B stockholders are entitled to share in the excess. The charge per acre foot is the

same for both classes. This classification has no present significance.

[4] The Colorado rule is said to be to the contrary. See Oligarchy Ditch Co. v. Farm Inv. Co., 40 Colo. 291, 88 P. 443.

[5] In Nevada, apparently, severance may not be made except in limited situations. The state statute provides: "All water used in this state for beneficial purposes shall remain appurtenant to the place of use; provided, that if for any reason it should at any time become impracticable to beneficially or economically use wa-

fer of the stock. His deed of conveyance to John G. Taylor, Inc. expressly included all water and distribution rights and all shares in water corporations. The subsequent attempt of Taylor to pledge the shares was ineffectual, for they were no longer his to pledge.

In the hands of appellee these shares possess no more than a nuisance value, but to appellant they represent indicia of title and the essential right to participate in management. We perceive no good reason why appellant should not have the relief prayed for.

Reversed with directions to enter a decree declaring appellant to be the owner of the shares.

GARRECHT, Circuit Judge (dissenting).

Upon the findings of fact, conclusions of law and the reasons set forth in the opinion of the District Court, this case should be affirmed. 20 F.Supp. 816.

---

ter at the place to which it is appurtenant, said right may be severed from such place of use and simultaneously transferred and become appurtenant to other place or places of use, in the manner provided in this act, and not otherwise, without losing priority of right heretofore established; and provided, that the provisions of this section shall not apply in cases of ditch or canal companies which have appropriated water for diversion and transmission to the lands of private persons at an annual charge." Stat. of Nevada 1913, c. 140, § 4. See United States v. Humboldt-Lovelock Irrig., Light & Power Co., 9 Cir., 97 F.2d 38; Prosole v. Steamboat Canal Co., supra.