**METROPOLITAN FINANCE CORPORATION OF CALIFORNIA,**
Appellant,

v.

**Clifton C. PIERCE and Eileen E. Pierce,**
Appellees.

No. 14222.

United States Court of Appeals
Ninth Circuit.

March 27, 1956.

MacFarlane, Schaefer & Haun, E. J. Caldecott, Los Angeles, Cal., for appellant.

Joseph D. Flaum, Walter L. Bruington, Walter L. M. Lorimer, Los Angeles, Cal., for appellee.

Before STEPHENS, FEE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

Here we must grope to try to find out what, if the parties had really thought about two irrigation ditch assessments of Nevada canal companies, they would have thought. In this diversity case between citizens of California and a Delaware corporation, we have a written agreement for the exchange of Los Angeles real estate, formerly owned by Metropolitan, the plaintiff and appellant, and Nevada farm land formerly owned by the Pierces, defendants and appellees. The agreement was signed by Metropolitan on December 28, 1951, and by the Pierces on January 5, 1952. Thereafter, the parties placed the transaction in escrow with the California Bank at Beverly Hills. The instructions to the bank were in writing and bear date of January 7, 1952. In the basic exchange agreement and in the escrow agreement we must try to find our answers. To these agreements, we shall return after reciting the facts of the ditch company assessments.

Performance was consummated by simultaneous exchange of title instruments on April 9, 1952. Then trouble arose over two ditch company assessments levied on the Nevada ditch company stock (transferred to Metropolitan contemporaneously with the exchange of deeds). We must take our facts from the two stipulations of the parties and the two signed agreements. The farm land was irrigated by ditches of two corporations, the Old Channel Ditch Company and the Young Ditch Company. Transferred, at the same time as the land, were 1,121% shares of the former and 2,856 shares of the latter.

On March 27, 1952, the board of directors of the Young Ditch Company levied an assessment of one dollar per share on all outstanding stock, making $2,856. payable on the Pierce-Metropolitan stock. The stipulation says that notice of

the assessment was "sent out under date of March 27, 1952." When it was actually sent out, is not in the record. On April 7, 1952, the board of directors of the Old Channel Ditch Company levied an assessment of 50 cents per share, making $560.66 due on the Metropolitan-Pierce stock in that company. It is stipulated that the notice of the Old Channel went to stockholders "under date of April 10, 1952." This date is one day after the sale was consummated. It should be related that each notice of assessment provided that the stockholder's stock would be sold at public auction for the assessment if the levy remained unpaid on May 15, 1952. There is no doubt from the record that if the Pierces were obligated to make the payment, Metropolitan made sufficient demand on the Pierces for payment. The Pierces refused to pay and Metropolitan paid the assessments which had been levied for the purpose of a periodic major cleaning out of mud and growth in the canals of the companies. The parties stipulated that, if material to this case, the interval of such a major overhaul should be considered as four years.

The trial court made findings of fact and a single conclusion of law. The findings of fact mirrored the stipulation. The conclusion said the transferors, Pierces, didn't owe Metropolitan anything. Judgment was entered accordingly. Metropolitan has appealed.

There are certain portions of the stipulation which may be important. The supplemental stipulation says in paragraph (9):

"That on or about the 14th day of April, 1952, Plaintiff in writing notified the Defendant Clifton C. Pierce of the assessment theretofore made by the Young Ditch Company in the sum of $2,856, and demanded

of said Defendants that they remit to Plaintiff the sum of $2,856 in order that the said Plaintiff could pay said assessment theretofore levied by the said Young Ditch Company and release said stock of the lien placed upon it by reason of said assessment. That on or about the 16th day of April, 1952, Plaintiff, having received no reply to its demand upon the Defendants that they pay the said assessment of the Young Ditch Company in order not to have such stock sold at public auction and thus lose said appurtenant stock, paid to the said Young Ditch Company the sum of $2,856 in payment of said assessment."

Paragraph (10), as to the Old Channel Ditch Company, is identical in form. Does the stipulation mean that Metropolitan paid the assessments to "release said stock of the lien" and "in order not to have such stock sold at public auction and thus lose said appurtenant stock" or does it mean that these were self-serving statements of Metropolitan in its written demands on the Pierces? We do not know.

■ We think paragraph (13) of the stipulation states the stock of the companies transferred to Metropolitan was stock that was appurtenant to the land when the text thereof says, the assessment was for the benefit of the land here exchanged and also for the benefit of "the other properties to which stock in said ditch companies was *also* appurtenant." [1]

Returning to the basic contract in which the parties agree to "exchange" the Los Angeles property for the Nevada property (approximately two thousand acres legally described therein) and after the Nevada description, the contract said "subject to all existing reservations, covenants, taxes, conditions, easements,

---

1. Nevada is a state where the law of prior appropriation applies to water and where irrigation water is appurtenant to the land. Prosole v. Steamboat Canal Co., 37 Nev. 154, 140 P. 720, 144 P. 744. In re Water Rights in Humboldt River Stream System, 49 Nev. 357, 246 P. 692.

We assume that the canal company shares, appurtenant to the land or not, represented the practical right to have one's water brought to one through the ditch company's ditch. Pacific States Savings & Loan Corporation v. Schmitt, 9 Cir., 103 F.2d 1002.

restrictions, rights-of-way of record, if any." Then followed a statement that the Nevada land was subject to encumbrances (mortgages) which Metropolitan was to assume and to pay as they matured.

There was to be title insurance for the new owners on both sides. Of this, the contract said, "The parties hereto shall supply policies of title insurance issued by reliable title companies for their respective properties described herein within sixty days from the date of opening of said escrow showing title to said properties to be merchantable and free from encumbrances except taxes and the encumbrances herein mentioned * * *"

On the subject of proration the contract said, "All taxes for the current fiscal year ending June 30th following this date on the California properties, and the taxes for the year ending December 31st, 1952, on the Nevada property, and the insurance, rents and other expenses affecting said properties shall be pro-rated as of the date this exchange is completed and consummated, which shall be the closing date of said escrow."

The escrow instructions described the title insurance to be furnished and said that the policy should provide that the property was free of all encumbrances except certain taxes, certain mortgages and (in printing) "and all taxes levied or assessed subsequent to the date of these instructions." We are inclined to give the escrow instructions little weight because therein is contained a typewritten insert which says, "These escrow instructions are drawn pursuant to a certain exchange agreement dated December 28, 1941, and executed by the parties hereto, a copy of which is handed you herewith, and shall not in any way be construed to alter, supersede, cancel or change said agreement."

As said in the beginning, the parties have left little evidence that they had their minds on the matter of ditch company assessments. Who drew the agreement, we do not know. We wonder. Moreover, there is no evidence to tell us whether the parties knew or did not know of the impending ditch assessments. But the foregoing statements are not made to invite the proffer of parol evidence. Oral statements of the parties today would probably be their legal opinions. Fair justice is more apt to be found by taking the contract, reading it and doing the best one can with it.

We think the judgment should be reversed on the case as it was presented to the trial court and a new trial had.

On the record, it would appear that Pierces agreed to transfer whatever they transferred free of encumbrances, other than those enumerated which enumeration did not include ditch assessments. We think the testing date is the date of the closing, rather than the date of the contract. This is for the reason that to us it appears the parties so contracted. We do not believe that the cited cases of either party here require the carrying of this transaction back to January 5, 1952, and having it speak as of the date the agreement was entered into.[2]

If these assessments be not encumbrances but expenses, then we are inclined to believe that a proration must apply and that the base period of the assessment must look to the future rather than backward. In this event Metropolitan's case becomes one almost de minimis.

In our view, Metropolitan showed it was entitled to recover something. The record goes far enough to show it was an expense or an encumbrance.[3] For failing to prove which one, perhaps Metropolitan failed in proof. But our best judgment is that a new trial is called for.

We do not feel constrained to announce as a matter of law that the assessments were encumbrances on the land or the stock. This is because the stipulation of

---

**2.** If the assessments became true liens then the effective dates of the liens will be important.

**3.** At least an expense definitely calculable.

the parties is unclear. To repeat, did the stipulation say that the stock was subject to a lien or did it say the plaintiff told the defendants it was subject to a lien?

We doubt the advisability of accepting the stipulation on a new trial. The parties should submit to the court a stipulation which shows their familiarity with Nevada irrigation and corporation law as well as giving more adequate facts. So many questions arise here. Apparently, Nevada law requires the articles of the company to reserve expressly the right to assess stockholders; otherwise, the right doesn't exist.[4] What did the articles and by-laws of these companies provide? The trial court was not even advised by the parties in what state the Young Ditch Company and Old Channel Ditch Company were incorporated. An interesting concept springs up when the parties stipulate that the stock was appurtenant to the land. How would it be sold separate from the land by the ditch company? If the assessment became a lien, on what did it become a lien? When did the assessment become a lien? With levy or with notice? If with notice, then was Pierce saved by a late mailing of the notice of Old Channel after the transaction was closed?

If it should eventuate that the ditch companies had no liens, thus no encumbrances, against what Metropolitan received from Pierces, but the charge was something that Metropolitan was obligated to pay in order to secure continued delivery of the water (thus an expense), then as indicated Metropolitan should have a recovery on a prorated basis for any period of time from the date of assessment to the date of closing. The period to be taken as running forward for four years.

Another question that lurks here is: What became of the deed to the Nevada property? (The parties say the stock was appurtenant to the land.) What does the deed say about encumbrances? If stock is appurtenant, maybe the deed is relevant. Does the contract to exchange the land disappear with the deed? What are the Nevada rules on effective dates of deeds or as of what dates do the deeds speak there?

We think the trial court's basic tactical error was in accepting a stipulation that is not adequate, but which on its face is probably good enough to say plaintiff is entitled to something.

In sum, we believe the parties could stipulate the facts from which an "encumbrance" could be found, that they could stipulate the facts from which an "expense" could be found, that they could stipulate to the existence of an "encumbrance," or that they could stipulate to the existence of an "expense." We think they inartfully and confusedly stipulated, the way they wrote it, to the existence of an "encumbrance" or an "expense," entitling plaintiff to something. Further, exploration of the facts may not bear this out or may come up with any one of several possible results.

Judgment reversed.

---

4. Nevada Compiled Laws, 1929, § 1603, subd. 6 as amended S 1673.